**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Carmine MASTRANGELO, a/k/a**
**John A. Marino, a/k/a John James**
**Rossi, Defendant-Appellant.**

No. 83–5363.

United States Court of Appeals,
Eleventh Circuit.

June 1, 1984.

Sandstrom & Haddad, Ray Sandstrom, Fort Lauderdale, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Linda Collins Hertz, Asst. U.S. Atty., Miami, Fla., Eileen M. O'Connor, Asst. U.S. Atty., Fort Lauderdale, Fla., Sonia O'Donnell, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before HILL and ANDERSON, Circuit Judges, and THORNBERRY *, Senior Circuit Judge.

JAMES C. HILL, Circuit Judge:

On November 29, 1978, John Carmine Mastrangelo purchased a pistol from a licensed firearms dealer in Fort Lauderdale, Florida. In purchasing the pistol, Mastrangelo completed a firearms transaction form, ATF form 4473, falsely representing his name, place of birth, and date of birth. During the transaction, he also furnished and exhibited a false driver's license to the firearms dealer.

Mastrangelo was arrested and charged in a two-count indictment. Count I charged that he knowingly made false and fictitious written statements on the firearms transaction form concerning his true name, place of birth, and date of birth, in violation of 18 U.S.C. § 922(a)(6) (1976). Count II charged Mastrangelo with knowingly furnishing and exhibiting false, fictitious, and misrepresented identification to the firearms dealer by furnishing and exhibiting the false driver's license, also in violation of 18 U.S.C. § 922(a)(6) (1976). Defendant was found guilty on both counts after a bench trial. He was sentenced to three years imprisonment as to Count I, ordered confined for a period of six months, with the

remainder of the sentence suspended, and given a term of five years probation to begin upon discharge from incarceration. Defendant was sentenced to twenty months on Count II, to be served concurrently with the sentence imposed on Count I.

Mastrangelo appeals his convictions and sentences arguing that the district court erred in denying his motion to dismiss for violation of the Speedy Trial Act, erred in denying his motion to suppress, and erred in adjudicating separate convictions and in imposing separate sentences. We find no violation of the Speedy Trial Act and no error in denying the motion to suppress. But, we view the appellant's making false written statements and furnishing false identification as a single violation of 18 U.S.C. § 922(a). Thus, we vacate the sentences and remand for resentencing.

## I. SPEEDY TRIAL ACT

Mastrangelo contends that his rights under the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1982), were violated because his trial did not commence quickly enough or, alternatively, because his trial commenced too quickly. Appellant was indicted on October 27, 1982, and first appeared for arraignment on November 3, 1982. Nineteen days later, on November 23, 1982, he filed a motion to dismiss the indictment and a motion to suppress. On December 15, 1982, the magistrate issued an order on the motions denying the motion to dismiss and stating that the motion to suppress would be retained by the district judge. Appellant filed a motion to dismiss for violation of the Speedy Trial Act on March 4, 1983. On March 14, 1983, the district judge denied the motion to dismiss under the Speedy Trial Act and conducted a hearing on the motion to suppress. At the conclusion of the March 14 hearing, the court denied the motion to suppress; trial commenced later the same day.

---

* Honorable Homer Thornberry, U.S. Circuit Judge for the Fifth Circuit, sitting by designa- tion.

Mastrangelo asserts that 120 days lapsed between the time of his arraignment on November 3, 1982, and the March 4, 1983, filing of his motion to dismiss for violation of the Speedy Trial Act.[1] According to appellant, the only excludable time within this 120-day period, as defined by 18 U.S.C. § 3161(h), was the 23-day period between November 23, 1983, and December 15, 1983, during which the magistrate considered the motion to dismiss the indictment and the motion to suppress. He reasons that 120 days less the 23 days of excludable time leaves 97 days of nonexcludable time, in violation of the 70-day period between postindictment arraignment and commencement of trial mandated by 18 U.S.C. § 3161(c)(1).

■ Section 3161(h)(1)(F) of the Speedy Trial Act, however, excludes all time from the filing of any pretrial motion through the conclusion of the hearing on such motion. As this court stated in *United States v. Stafford*, 697 F.2d 1368, 1373 (11th Cir. 1983), "[I]f a hearing is held, (F) by its terms excludes without qualification the entire period between the filing of the motion and the conclusion of the hearing."

*See also United States v. Campbell*, 706 F.2d 1138, 1143 (11th Cir.1983). Therefore, the entire period between the filing of the motion to suppress on November 23, 1982, and the conclusion of the hearing on the motion on March 14, 1983, is excludable from the calculation of the 70-day period imposed by section 3161(c)(1). Accordingly, only 19 nonexcludable days passed from the appellant's arraignment to the commencement of his trial, well within the time strictures of the Speedy Trial Act.[2]

■ Alternatively, Mastrangelo contends that if the exclusion in section 3161(h)(1)(F) results in only 19 nonexcludable days, then 18 U.S.C. § 3161(c)(2) was violated. Section 3161(c)(2) of the Act states that, unless the defendant consents in writing, the trial shall not commence less than 30 days from the date on which the defendant first appears through counsel. Appellant maintains that the mandatory minimum period of 30 days is extended by the periods of excludable delay provided in 18 U.S.C. § 3161(h).

Section 3161(h) states that the enumerated periods of delay "shall be excluded in computing the time within which an infor-

---

**1.** Appellant acknowledges that all time between the March 4, 1983, motion to dismiss and the March 14, 1984, trial was excludable.

**2.** Appellant suggests that even though the motion to suppress was decided with a hearing, we should exclude under section 3161(h)(1)(F) only such time as was "reasonably necessary" for the fair processing of the motion. We recognize that other circuits have engrafted a reasonableness limitation on the amount of time excluded for pretrial motions resulting in hearings. *See United States v. Mitchell*, 723 F.2d 1040, 1047 (1st Cir.1983); *United States v. Novak*, 715 F.2d 810, 820 (3d Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984); *United States v. Cobb*, 697 F.2d 38, 44 (2d Cir. 1982). Nonetheless, this approach has not been adopted by the Eleventh Circuit. *See Stafford*, 697 F.2d at 1373 n. 4; *Campbell*, 706 F.2d at 1143 n. 12.

In this case, we need not and do not pass on whether exclusions under section 3161(h)(1)(F) may sometimes be inappropriate if the delay is unreasonable for we observe that, even under the gloss of the statute advanced by appellant, the trial in this case was held within the Act's 70-day period. Under *United States v. Mers*, 701

F.2d 1321, 1335–37 (11th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 482, 78 L.Ed.2d 679 (1983), the magistrate and district judge have 30 days each during which to take pretrial motions under advisement. *See* 18 U.S.C. § 3161(h)(1)(J). In our case, the 23 days the magistrate considered the motion to dismiss the indictment and the motion to suppress as well as 30 days of the time the district judge subsequently had either of the motions under his own consideration are excludable under section 3161(h)(1)(J). Certainly those periods would be considered "reasonably necessary" since they are provided by the Act. Thus, 53 days of the period between appellant's arraignment and the filing of the motion to dismiss for violation of the Speedy Trial Act are excluded. The best argument for appellant, therefore, results in only 67 includable days between arraignment and trial: 19 days for the period between the arraignment on November 4, 1982, and the filing of the two motions on November 23, 1982, and 48 days for the time between January 14, 1983, the end of the reasonable 53-day period while the motions were under advisement by the magistrate and district judge, and March 4, 1983, the filing of the motion to dismiss under the Speedy Trial Act.

mation or an indictment must be filed, or in computing the time within which the trial of any such offense must commence." Therefore, the plain and unambiguous language of section 3161(h) does not apply the excludable time provisions to the 30-day time limit set forth in section 3161(c)(2). In the only reported case addressing the issue, the Fourth Circuit carefully considered the statutory language, the legislative history, and the purpose of the Speedy Trial Act and held that the thirty-day minimum period for commencement of trial is not extended by the exclusions of section 3161(h). *United States v. Wooten*, 688 F.2d 941, 949–51 (4th Cir.1982). This is the same view announced by the Committee on the Administration of the Criminal Law of the Judicial Conference. *Guidelines to the Administration of the Speedy Trial Act of 1974, As Amended* 12–14 (1981); *see also* Misner, *The 1979 Amendments to the Speedy Trial Act: Death of the Planning Process*, 32 Hastings L.J. 635, 653 (1981) ("This Article concludes that the excludable time provisions should be inapplicable to section 3161(c)(2)").

Although we are aware of language in the Senate Report on the 1979 Amendments to the Speedy Trial Act that suggests that the exclusions should be applied to extend the limitations in section 3161(c)(2), Sen.Rep. No. 96–212, 96th Cong., 1st Sess. 32 (1979), we agree with the interpretation of section 3161(c)(2) by the court in *United States v. Wooten*. Particularly under the facts of this case, where the defendant had over four months to prepare for trial and at no time suggested to the trial court any need for further time to prepare, the purpose of section 3161(c)(2) to ensure that a defendant has adequate time for pretrial preparation was aptly served without requiring further nonexcludable time. We therefore hold that the thirty-day limitation established by 18 U.S.C. § 3161(c)(2) is measured simply in calendar days and not by application of the excludable time provisions of section 3161(h).

Finding that appellant was not brought to trial either too soon or too late, we hold that the district court did not err in denying the motion to dismiss for violation of the Speedy Trial Act.

## II. MOTION TO SUPPRESS

The district court denied Mastrangelo's motion to suppress (1) the pistol found in his car after an arrest by state police for conspiracy to traffic in marijuana, (2) a driver's license in the name of John Angelo Marino, (3) a driver's license in the name of John James Rossi, and (4) the ATF transaction form used in purchasing the pistol from the firearms dealer. Mastrangelo asserts that his original arrest for conspiracy to traffic in marijuana was illegal and tainted the seizure of the pistol and other evidence derived as a result of the arrest.

In August and September of 1980, undercover police officers met Peter Cristodero and William O'Donnell and made arrangements for Cristodero and O'Donnell to purchase 1,000 pounds of marijuana from the officers. Cristodero arrived at the agreed time and place for the sale along with several associates, including Mastrangelo, who was driving a Cadillac with O'Donnell as a passenger. One of the officers stated that he had to see the money before any marijuana was exchanged. Mastrangelo then leaned over, opened the glove box to the Cadillac, either pushed a button that opened the trunk of the car or told O'Donnell to push the button, and said the money was in the trunk in the suitcase. The officer counted $200,000 in the trunk and walked over to talk to another officer. The two officers returned to the car and appellant was told that the second officer wanted to view the money. Either Mastrangelo or one of his associates through his command again opened the trunk of appellant's car. During the transaction, an officer noted what appeared to be a police radio in the Cadillac and asked Mastrangelo about it. Appellant responded that he checked out the area before he drove up for the meeting and stated that he could pick up United States Customs, DEA, and other local agencies with the radio.

Appellant and his associates were placed under arrest for conspiracy to traffic in cannabis. At the time of his arrest, Mastrangelo identified himself as John Rossi and produced a Florida driver's license bearing that name. The Cadillac was seized and, during the course of a routine inventory, a pistol was found directly behind the driver's seat. As a result, appellant was also charged with possession of a firearm during the commission of a felony.

Subsequent investigation by the Fort Lauderdale Police Department disclosed the ATF form 4473 reflecting that the pistol was sold to John Marino. The form indicated that a Florida driver's license issued to John Marino had been presented during the gun transaction as a form of identification. The investigation also revealed that Mastrangelo applied for and received two Florida driver's licenses, one in the name of John Rossi and the second in the name of John Marino. The police further determined that appellant had been arrested in New York under his real name and in Florida under one of his assumed names, John Marino.

Based on the information that Mastrangelo had a driver's license in the name of John Marino, a detective for the Fort Lauderdale Police Department, upon observing appellant's parked vehicle, set up surveillance. Appellant was observed driving away and was stopped by the police and asked to produce his driver's license. After presenting a license with the name John Marino, Mastrangelo was placed under arrest and charged with unlawful possession of a driver's license.

As to the charge of conspiracy to traffic in cannabis, Mastrangelo filed a motion to dismiss which was granted by the state trial court on the ground that, because an essential ingredient of the offense was to be performed by a government agent, the defendant could not legally be convicted of a conspiracy under Florida law. On appeal, the ruling of the trial court was reversed and the case was remanded for further proceedings. *State v. Cristodero*, 426

So.2d 977 (Fla.Dist.Ct.App.1982), *pet. for review denied*, 436 So.2d 100 (Fla.1983).

Appellant also filed a motion to dismiss the charge of unlawful possession of a driver's license. The motion was granted on the premise that the police learned of Mastrangelo's other driver's licenses only through the conspiracy arrest, thus tainting the discovery of the false driver's license. That decision was not appealed. However, the trial court's basis for finding the arrest for unlawful possession of a driver's license tainted was rejected by the appellate court in *Cristodero*.

■ Appellant argues that because the state trial court entered an order dismissing the charges for conspiracy to traffic in cannabis, and because the federal indictment in this case was entered two months before the state appellate court reversed the dismissal of the conspiracy charges, both the federal government and the district court were bound by the state trial court's rulings and were required to suppress any evidence resulting from the state arrests.

We reject appellant's contention for a number of reasons. First, the state trial court was concerned with whether the evidence would support a conviction and did not purport to determine if probable cause existed to arrest Mastrangelo on the conspiracy charges. Nevertheless, the sufficiency of the evidence and the validity of an arrest are judged by different standards:

> The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest. We have made clear that the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest.

*Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979) (citations omitted). Therefore, even assuming a federal district court is bound by a state court's determination of probable

cause to arrest, the state court in this case made no finding on the legality of the conspiracy arrest but simply found that the evidence would not support a conviction.

Second, the admissibility of evidence in a federal prosecution is governed by federal law, rather than state law. *United States v. Melancon*, 462 F.2d 82, 92 (5th Cir.), *cert. denied*, 409 U.S. 1038, 93 S.Ct. 516, 34 L.Ed.2d 487 (1972). The Supreme court has stated:

> In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed.

*Elkins v. United States*, 364 U.S. 206, 223–24, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960); *c.f. United States v. Castillo*, 449 F.2d 1300, 1301 n. 2 (5th Cir.1971) (fact that procedure followed by law officers violated state law does not deprive the evidence of its admissibility in a federal court trial).

Finally, the United States was not a party to the state court proceedings, nor were the actions of any federal officers considered by that court. Any suggestion that the doctrine of collateral estoppel bars the government in a federal proceeding from using the evidence obtained as a result of Mastrangelo's two arrests by state police officers is unfounded. *See United States v. Singer*, 687 F.2d 1135, 1144 n. 16 (8th Cir.1982), *adopted*, 710 F.2d 431, 432 (8th Cir.1983) (en banc); *United States v. Agee*, 597 F.2d 350, 360 (3d Cir.), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979); *United States v. Mejias*, 552 F.2d 435, 444 (2d Cir.), *cert. denied*, 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977).

■ Therefore, the admissibility of the evidence against Mastrangelo must be determined independently by the district court applying federal law. Under federal law, the validity of the arrest for conspir-

acy to traffic in cannabis depends on whether the arresting officer had probable cause to arrest Mastrangelo. *See Michigan v. DeFillippo*, 443 U.S. at 36, 99 S.Ct. at 2631. Probable cause to arrest is present where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. *Id.* at 37, 99 S.Ct. at 2632. The district court's finding that there was probable cause to arrest was based on the credibility of the witnesses at the hearing on the motion to suppress and on the facts outlined above, including Mastrangelo's participation in the transaction as evidenced by his words and actions. Under the clearly erroneous standard, *see United States v. Jonas*, 639 F.2d 200, 204 (5th Cir.1981), we cannot conclude that the district court erred in finding that there was probable cause for Mastrangelo's arrest for conspiracy to traffic in cannabis.

■ The court also did not err in refusing to suppress any evidence seized as a result of Mastrangelo's arrest for unlawful possession of a Florida driver's license. From the discovered information concerning appellant's unlawful use of false driver's licenses, the police had reasonable grounds to suspect criminal activity and to stop Mastrangelo's vehicle and request production of a driver's license. *See United States v. Michel*, 588 F.2d 986, 997 (5th Cir.), *cert. denied*, 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979). Once Mastrangelo produced a driver's license bearing the name John Marino, the police had probable cause to arrest him for unlawful possession of a driver's license. *See Dell v. Louisiana*, 468 F.2d 324, 326 (5th Cir.1972); *cert. denied*, 411 U.S. 938, 93 S.Ct. 1904, 36 L.Ed.2d 400 (1973); *see also State v. Johnson*, 414 So.2d 18 (Fla.Dist.Ct.App.1982).

Accordingly, we hold that the district court did not err in refusing to suppress the evidence obtained as a result of Mastrangelo's two arrests by state authorities.

### III. SEPARATE CONVICTIONS AND SENTENCES

Appellant was charged, convicted, and sentenced for two separate violations of 18 U.S.C. § 922(a)(6) arising out of the acquisition of one pistol. Count I charged Mastrangelo with knowingly making false and fictitious written statements on the ATF form with respect to his true name, place of birth, and date of birth. Count II charged that Mastrangelo knowingly furnished and exhibited false, fictitious, and misrepresented identification by furnishing and exhibiting a false driver's license that incorrectly identified his name and place of birth.

■ Appellant contends that the court erred in entering separate convictions under section 922(a)(6). In effect, he asserts that the indictment was multiplicitous because the indictment charged a single offense in two counts. Mastrangelo failed, however, to raise the issue of multiplicity, which was apparent on the face of the indictment, before trial. Federal Rule of Criminal Procedure 12(b)(2) provides that defenses and objections based on defects in the indictment must be raised prior to trial. Appellant's failure to object to the multiplicity of the indictment before trial constitutes a waiver of the multiplicity objection with regard to any alleged error in the indictment. *See United States v. Solomon,* 726 F.2d 677, 678 n. 2 (11th Cir.1984); *United States v. Viserto,* 596 F.2d 531, 538 (2d Cir.) (and cases cited therein), *cert. denied,* 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979).[3]

■ While Mastrangelo's failure to object to the indictment bars him from asserting that he cannot be indicted or convicted for two crimes, he may challenge the imposition of multiple sentences for the alleged commission of one crime. We reasoned in *United States v. Bradsby,* 628 F.2d 901 (5th Cir.1980),

> The argument that one waives his right to object to the imposition of multiple sentences by his failure to object to the multiplicitous nature of an indictment is a *non sequitur.* Rule 12 applies only to objections with regard to the error in the indictment itself; the effect of Rule 12 is that dismissal of a multiplicitous indictment is not required; however, if sentences are imposed on each count of that multiplicitous indictment the defendant is not forced to serve the erroneous sentence because of any waiver.

*Id.* at 906, (*quoting United States v. Rosenbarger,* 536 F.2d 715, 721–22 (6th Cir. 1976), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977)). Thus, appellant may challenge his sentences, although his failure to object to the indictment prior to trial precludes him from objecting to the multiple convictions.[4]

■ In deciding whether the district court could properly impose multiple sentences, we must determine the allowable unit of prosecution. *United States v. Universal C.I.T. Corp.,* 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952). It is clear that the allowable unit of prosecution under section 922(a)(6) is a matter within the discretion of Congress, subject only to constitutional limitations. *Bell v. United States,* 349 U.S. 81, 82, 75 S.Ct. 620, 621, 99 L.Ed. 905 (1955). Thus, it is our task to ascertain whether Congress intended to treat the making in a firearms transaction form of false statements as to identity and

---

**3.** Appellant has not sought to show cause for his failure to object to the indictment prior to trial. *See* Fed.R.Crim.P. 12(f); *Davis v. United States,* 411 U.S. 233, 242, 93 S.Ct. 1577, 1582, 36 L.Ed.2d 216 (1973).

**4.** During the sentencing hearing, Mastrangelo objected to the multiple sentences, arguing that only one crime had been committed and, therefore, only one sentence could be imposed. The government suggests that appellant also waived his right to object to his sentences by failing to follow up his objection at the sentencing hearing with an appropriate pleading, such as a motion under Fed.R.Crim.P. 35. On this point, we also agree with the reasoning of the Sixth Circuit in *United States v. Rosenbarger,* 536 F.2d at 722: "[S]ince the defect in the sentence is apparent from the record, it is proper for this Court to resolve the issue on direct appeal rather than wait for defendant to file a Rule 35 motion ...."

the furnishing and exhibiting of false identification to verify those false statements as one act or as multiple acts for purposes of punishment under 18 U.S.C. § 922(a)(6). *See United States v. Davis*, 656 F.2d 153, 158 (5th Cir.1981), *cert. denied*, 456 U.S. 930, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982).

Section 922(a)(6), of Title 18, United States Code, provides that it shall be unlawful:

> for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a ... licensed dealer ... knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such ... dealer ... with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

This provision "was enacted as a means of proving adequate and truthful information about firearms transactions." *Huddleston v. United States*, 415 U.S. 814, 824–25, 94 S.Ct. 1262, 1268–69, 39 L.Ed.2d 782 (1974). The statutory language, however, does not indicate whether a purchaser who makes false written statements and exhibits false identification, both intended to deceive the firearms dealer with respect to the buyer's identity, commits two crimes or one crime. The legislative history is equally uninstructive on the appropriate unit of prosecution in this case.[5] *See Brown v. United States*, 623 F.2d 54, 58–59 (9th Cir.1980).

▮ When Congress does not fix the applicable unit of prosecution and its punishment clearly and without ambiguity, the ambiguity will be resolved in favor of lenity. *Bell*, 349 U.S. at 83–84, 75 S.Ct. at 622.

Numerous courts have found subsections of section 922 to be ambiguous and have applied the rule of lenity. *See, e.g., United States v. Valentine*, 706 F.2d 282, 293 & n. 10 (10th Cir.1983) (collecting cases). We likewise are faced with an ambiguity because the making of false written statements concerning one's identity and the exhibiting of false identification concerning one's identity, in connection with the purchase of a single firearm, could be interpreted under section 922(a)(6) either as solely deceit as to the material fact of identity, and one offense, or as two separate acts of deceit, and two offenses. *See generally United States v. Brozyna*, 571 F.2d 742, 745 (2d Cir.1978) (gravaman of section 922(a)(6) is the use of deceit in order to obtain a firearm). Because line 9 of the ATF form states that, unless the buyer is known by the firearms dealer, positive identification is required, it would appear that any time a purchaser seeks to deceive a dealer by concealing his true identity through false statements on the form, the purchaser would at the same time be required by the ATF form to accomplish the act of deceit by exhibiting false identification. In the absence of a clear and unambiguous statement by Congress, we are unable under the rule of lenity to make a single act of deceit as to one's identity, furthered by false written statements and false identification in connection with the purchase of a single firearm, subject to multiple punishments.

▮ Although we know of no reported case that has addressed the issue presented to this court, our conclusion that Mastrangelo's actions constitute a single violation of section 922(a)(6) is buttressed by the decisions of other courts. In *Brown v. United States*, 623 F.2d 54 (9th Cir.1980), the defendant was charged with falsely

---

**5.** This paragraph [§ 922(a)(6)] prohibits the making of false statements or the use of any deceitful practice (both knowingly) by a person in connection with the acquisition or attempted acquisition of a firearm or ammunition from a licensee. To invoke the prohibition, the false statement or deceitful practice must be material to the lawfulness of the sale of the firearm or ammunition under the provisions of the chapter. The requirement that one [who] obtains a firearm or ammunition from a Federal licensee must properly identify himself is inherent in this prohibition.
H.R.Rep. No. 1577, 90th Cong., 2d Sess. 13 (1968), *reprinted in* 1968 U.S.Code Cong. & Ad. News 4410, 4419.

stating on an ATF document that his name was Robert Young (Count I), falsely stating on the same document that he had never been convicted of a felony (Count II), and producing a false driver's license to prove identity (Count III). The trial judge reasoned that the defendant engaged in two separate acts that frustrated the purpose of section 922(a)(6): (1) supplying a false name and false identity, and (2) concealing his prior criminal record. *Id.* at 56. The judge imposed consecutive five-year terms for Counts I and II, and a five-year term on Count III to run concurrently with Counts I and II. On appeal, Brown claimed that the consecutive sentences for Counts I and II were improper.[6] The Eighth Circuit agreed, holding that the ambiguous statutory language and legislative history of 18 U.S.C. § 922(a)(6) required the court to conclude that a defendant cannot be given cumulative punishments for a single document that twice violates section 922(a)(6). *Id.* at 59.

Other cases have involved separate instances of providing false information, but they are unlike the instant case, where, in the process of a single transaction form, the defendant used false written statements and false identification as the means of deceiving the firearms dealer solely with respect to the defendant's true identity. *See United States v. Solomon,* 726 F.2d 677 (11th Cir.1984) (false information on two separate ATF forms, on two separate days, for the sale of two firearms constitutes two separate offenses); *United States v. Williams,* 685 F.2d 319 (9th Cir. 1982) (defendant was correctly indicted on seven counts where he bought seven guns on five separate occasions and made a false statement concerning his criminal record on the separate ATF forms that he filled out for each of the seven guns); *United States v. Mason,* 611 F.2d 49 (4th Cir.1979) (simultaneous execution of multiple forms in which defendant falsely responded that he had not been convicted treated as only one offense); *United States v. Long,* 524

F.2d 660 (9th Cir.1975) (two separate violations where defendant gave false information on two forms for the purchase of two guns).

While Mastrangelo's convictions are affirmed, we hold that the district court erred in imposing separate sentences for Mastrangelo's convictions on Counts I and II. The making of false statements and the exhibiting of false identification concerning the same material fact and the same firearm constitutes one offense under 18 U.S.C. § 922(a)(6) and is subject to only one punishment under section 924. We therefore vacate Mastrangelo's sentences on Counts I and II and remand to the district court with directions that the appellant be sentenced for a single violation of 18 U.S.C. § 922(a)(6).

Convictions AFFIRMED; sentences VACATED; and case REMANDED with instructions for resentencing.

---

**6.** Brown did not contest the imposition of the five-year term for the use of false identity, perhaps because that sentence ran concurrently

with the consecutive sentences imposed under Counts I and II.