**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Juan Anastasio GARCIA, Armando Garcia, Jesus Idalberto Valdes, Ibraham Fernandez, Defendants-Appellants.**

No. 84–5991.

United States Court of Appeals,
Eleventh Circuit.

Jan. 2, 1986.

Philip M. Gerson, Miami, Fla., for J. Garcia and A. Garcia.

Theodore J. Sakowitz, William M. Pearson, John Mattes, Federal Public Defender, Miami, Fla., for J. Valdes and I. Fernandez.

Stanley Marcus, U.S. Atty., Ted Bandstra, Linda Collins-Hertz, Nancy L. Worthington, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before VANCE and HATCHETT, Circuit Judges, and ATKINS *, District Judge.

HATCHETT, Circuit Judge:

In this appeal, we determine whether the time between referral of a *James* motion (*United States v. James*, 590 F.2d 575 (5th Cir.1979) (en banc)) to a district judge and the beginning of trial is excludable or includable under the Speedy Trial Act, 18 U.S.C.A. §§ 3161–74. Agreeing with the district court that the time is excludable, we affirm.

### FACTS

On June 11, 1984, at 8:45 a.m., Customs Air Officer, Ira Breaux, on patrol aboard a Customs aircraft near Andros Island in the Bahamas, observed two small vessels traveling close together in the same direction. When Breaux descended to an altitude of approximately 100 feet and made a low pass over the vessels, he saw "bale-like" objects stacked on the open deck of one vessel and some unidentified material covered with tarpaulin on the other vessel. Breaux described the packages as rectangular, three feet long, burlap-looking, and brown. Based upon experience, Breaux believed that the bales contained contraband.

From an altitude of approximately 5,000 feet, Breaux maintained constant surveillance of the vessels. Pursuant to his request for Coast Guard assistance to board

* Honorable C. Clyde, Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

the vessels, the Coast Guard dispatched an aircraft and its cutter, "Shearwater." The two suspect vessels stopped about twenty feet apart. Then they proceeded in opposite directions. As the vessels zigzagged through the water in an erratic manner, bales were thrown into the water.

### The Garcia Vessel

Breaux descended to 100 feet and observed a person throwing between 15 and 20 bales into the water, while the other person steered the boat. Breaux took photographs of Garcia throwing bales into the water. When the Coast Guard's aircraft and cutter, "Shearwater," arrived, Petty Officers Weatherby and Misner, crew members aboard the "Shearwater," received authorization to board the vessel.

As the "Shearwater" approached the Garcia vessel, Weatherby observed through binoculars a person aboard the Garcia vessel washing down the deck. After boarding, Weatherby recognized the distinct smell of marijuana and noticed a green leafy matter on the deck and walls of the vessel; field test results identified the substance as marijuana. As Weatherby searched the vessel, he found no operable fishing equipment other than two hand lines with rusted fish hooks, a gaff, and a tackle box. Armando Garcia and Juan Anastasio Garcia occupied the vessel.

The Coast Guard arrested the Garcias. Following their arrest, the Garcias surrendered their clothing and personal effects to the Coast Guard. Test results indicated that matter removed from the bottom of Armando Garcia's shoes was marijuana.

### The Fernandez/Valdes Vessel

Meanwhile, Cmdr. Lewis Blankenship, a Coast Guard aviator, followed the Fernandez/Valdes vessel in his Coast Guard aircraft. Descending to an altitude of 300 feet, Blankenship activated his aircraft siren; also, using his high powered public address system, Blankenship repeatedly ordered the vessel to stop.

Making low passes over the vessel, Comdr. Blankenship observed at least eight rectangular objects in the wake of the vessel. Blankenship described the objects as reddish-brown bales approximately two feet wide and three feet long. As the "Shearwater" approached the Fernandez/Valdes vessel, Lt. Howe observed the crew members throwing objects into the water. Howe watched one member of the crew remove his shirt and douse himself with salt water while the other two occupants splashed salt water around the cabin.

Upon boarding the vessel, Lt. Howe detected the odor of marijuana and found a green leafy substance on the deck of the boat. Test results identified the substance as marijuana. The Coast Guard arrested Fernandez, Valdes, and Sanchez on this vessel; laboratory analysis revealed that their shoes contained trace amounts of marijuana. Following the arrest of Fernandez, Valdes, and Sanchez, the Coast Guard retrieved eight bales of marijuana that the men threw into the water.

On June 21, 1984, a grand jury returned two two-count indictments charging appellants Armando Garcia and Juan Anastasio Garcia in Count I with conspiracy to possess with intent to distribute marijuana aboard a vessel of the United States in violation of 21 U.S.C.A. § 955(c), and in Count II with possession with intent to distribute marijuana while aboard a United States vessel in violation of 21 U.S.C.A. § 955a(a) and 18 U.S.C.A. § 2. The grand jury also returned a separate two-count indictment charging Jesus Sanchez and appellants Ibraham Fernandez and Jesus Idalberto Valdes with the identical offenses. On August 30, 1984, the grand jury combined these two indictments into a single, superseding indictment charging the five crewmen aboard both vessels with a single conspiracy and possession of marijuana with intent to distribute.

Prior to the return of the superseding indictment, appellants filed numerous pre-

trial motions, including motions for a *James* hearing. *United States v. James*, 590 F.2d 575 (5th Cir.1979) (en banc). On August 14 and 15, 1984, the magistrate ruled on the pretrial motions of all appellants but expressly deferred motions for *James* hearings to the district court. On October 18, 1984, the trial against all appellants commenced on the superseding indictment. On October 25, 1984, a jury convicted all appellants on Count II for possession of marijuana with intent to distribute. 18 U.S.C.A. § 2; 21 U.S.C.A. § 955a(a).[1]

In this appeal, appellants assert a violation of the Speedy Trial Act, 18 U.S.C.A. §§ 3161–74. We must decide whether after the filing of a motion for a *James* hearing, 18 U.S.C.A. § 3161(h)(1)(F) excludes all time until the court conducts a hearing, or whether section 3161(h)(1)(J) limits the excludable time to thirty days.

The Speedy Trial Act requires that a defendant be tried within seventy days of the filing of the information or indictment, or of the date the defendant first appears before a judicial officer of the court in which the charge is pending, whichever occurs later. 18 U.S.C.A. § 3161(c)(1). The seventy-day period, however, does not mean seventy consecutive calendar days. The Act enumerates periods of excludable delay. 18 U.S.C.A. § 3161(h)(1). *See United States v. Yunis*, 723 F.2d 795 (11th Cir.1984); *United States v. Severdija*, 723 F.2d 791 (11th Cir.1984).

The Garcias' speedy trial period began on June 22, 1984, the day after their indictment, because that date followed their first appearance before a judicial officer. *Severdija*, 723 F.2d at 793. The Garcias' subsequent arraignment on July 5, 1984, is an excludable day. 11 U.S.C.A. § 3161(h)(1); *Severdija*, 723 F.2d at 793 (citing *United States v. Campbell*, 706 F.2d 1138, 1139 n. 1 (11th Cir.1983)). On August 6, 1984, appellants filed a motion for extension of time; the day pretrial motions are filed is excludable. *United States v. Pirolli*, 742

F.2d 1382, 1384 (11th Cir.1984). At this point, forty-four includable days lapsed. On August 13, 1984, appellants filed several pretrial motions, including a *James* motion. On August 14, 1984, a magistrate denied appellants' motion for extension of time. The next day, the magistrate ruled on all pretrial motions, except the motion for a *James* hearing which it deferred to the district court.

Similarly, Fernandez and Valdes's speedy trial period began on June 22, 1984. Their arraignment on July 6, 1984, is an excludable day. When Jesus Sanchez, a codefendant, filed a motion for continuance, thirty-three days had lapsed. "Anything which 'stops the clock' for one defendant does so for the same amount of time as to all defendants." *United States v. Pirolli*, 742 F.2d at 1384. On July 30, 1984, the magistrate granted a continuance until September 4, 1984. On August 1, 1984, appellants filed several pretrial motions, including the motion for a *James* hearing. At this point, thirty-four days had lapsed. On August 14, 1984, the magistrate ruled on all pretrial motions, but deferred the motion for a *James* hearing to the district court.

On October 18, 1984, the first day of trial, the appellants filed a motion to dismiss based upon a Speedy Trial violation. Appellants argue that the time between the magistrate's deferral of the *James* motion to the district court and the beginning of trial is not properly excludable; hence, their trial began after the expiration of the seventy days under the Speedy Trial Act.

Immediately before the jury was sworn, the district court recognized the pending motions for a *James* hearing and stated that, "a [magistrate's] deferral of a motion to the trial court, which is routinely done in this district, is not a denial of the motion for a *James* hearing." Relying upon *United States v. Stafford*, 697 F.2d 1368 (11th Cir.1983), and *United States v. Mastrangelo*, 733 F.2d 793 (11th Cir.1984), the district court found that under 18 U.S.C.A.

---

**1.** The jury convicted Sanchez, also, but he did    not participate in this appeal.

§ 3161(h)(1), filing the *James* motion tolled speedy trial time until the district court conducted a hearing. When the Garcias filed their *James* motion on August 6, 1984, forty-four days had lapsed; when Fernandez and Valdes filed their *James* motion on August 1, 1984, thirty-four days had lapsed. The district court then denied appellants' October 18, 1984, motion to dismiss for speedy trial violation.

Our analysis of excludable time following the filing of the *James* motion begins with a review of two sections of the Speedy Trial Act, 11 U.S.C.A. §§ 3161(h)(1)(F) and (h)(1)(J). These sections provide:

> (h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
>
> . . . .
>
> (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motions;
>
> . . . .
>
> (J) delay reasonable attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

In *Stafford*, the court stated that both (F) and (J) apply to pretrial motions. 697 F.2d at 1373. Section (F) applies when a pretrial motion requires a hearing. "If a hearing is held, (F) by its terms excludes without qualification the entire period between the filing of the motion and the conclusion of the hearing." *Stafford*, 697 F.2d at 1373. Also, "unlike motions decided without hearings, there is no requirement in (F) that the hearing be held promptly." *Stafford*, 697 F.2d at 1373 n. 4. Section (J) applies where

the motion requires no hearing and its disposition is not prompt; (J) permits an exclusion of up to thirty days from the time the motion is "actually under advisement" by the court. *Stafford*, 697 F.2d at 1373. "Reading (F) and (J) together, (J) could be viewed as a time limitation on the exclusion period permitted for motions that require no hearing and are not promptly disposed of." *Stafford*, 697 F.2d at 1373.

In *Mastrangelo*, appellant filed a motion to suppress on November 23, 1982. The magistrate issued an order on December 15, 1982, referring the motion to the district court. On March 14, 1983, the first day of trial, the district court conducted a hearing on the motion to suppress. Mastrangelo argued that his right to a speedy trial was violated. On appeal, the court stated that "Section 3161(h)(1)(F) of the Speedy Trial Act, however, excludes all time from the filing of any pretrial motion through the conclusion of the hearing on such motion." *Mastrangelo*, 733 F.2d at 796. Consequently, the court concluded that the time between November 23, 1982, and March 14, 1983, was properly excluded.

Appellants argue that section 3161(h)(1)(F) applies only to pretrial motions and that after a magistrate defers the *James* motion to the district court, it loses its character as a pretrial motion. Appellants assert that the magistrate's deferral of the motion has the same effect as a denial. Hence, the district court's consideration of a *James* motion is best characterized as a trial motion with no excludable time after the magistrate's decision to defer judgment until trial.

Alternatively, appellants rely upon *United States v. DeLongchamps*, where the court applied the thirty day limit under section 3161(h)(1)(J) to calculate excludable time when the magistrate deferred a *James* motion to the district court. 679 F.2d 217 (11th Cir.1982). Appellants argue that in *DeLongchamps*, the magistrate's deferral of the *James* motion did not extend the excludable time to the trial date. Further,

appellants insist that the magistrate's deferral changed the *James* pretrial motion into a trial motion. Appellants contend that in *DeLongchamps,* the court considered it doubtful that a motion carried with the trial creates excludable time within the meaning of 18 U.S.C.A. § 3161(h)(1)(J). *DeLongchamps,* 679 F.2d at 220 n. 5. The appellants then argue that *DeLongchamps* conflicts with *United States v. Pirolli,* where the court held that the magistrate's deferral of a pretrial *James* motion to the district court created excludable time.

Appellants have misunderstood *DeLongchamps* and *Pirolli.* In *DeLongchamps,* the court applied section 3161(h)(1)(J) to calculate excludable time because it assumed that the pretrial motions taken under advisement by the magistrate remained in that status after deferral. Section 3161(h)(1)(J) applies a thirty day limit to pretrial motions taken under advisement. Accordingly, the court correctly applied section 3161(h)(1)(J).

In *United States v. Pirolli,* the court again considered the calculation of excludable time as it related to the magistrate's deferral to the district court of a *James* motion. Here, however, the magistrate never took the *James* motion under advisement. The court compared a *James* motion with a motion to suppress, both of which require hearings.

In *United States v. Mastrangelo,* 733 F.2d 793 (11th Cir.1984), a motion to suppress evidence because of an alleged illegal search was referred by the magistrate to the trial court. This court held that the period from the filing of the motion until the conclusion of the suppression hearing was excludable time pursuant to section 3161(h)(1)(F). 733 F.2d at 796. A *James* motion and a fourth amendment suppression motion are procedurally alike. Both call for a hearing. Thus, the decision in *Mastrangelo* controls the issue here.

Although the *Pirolli* court did not decide whether to apply section 3161(h)(1)(F) or

(h)(1)(J), we follow the court's reliance on *Mastrangelo* and hold that the period from the filing of the *James* motion until the conclusion of the hearing is excludable time pursuant to section 3161(h)(1)(F). The magistrate's deferral of the *James* motion to the district court preserved its character as a pretrial motion. A district court may then elect to make a *James* determination either before or during trial. *United States v. James,* 590 F.2d 575, 581–83 (5th Cir.1979). For speedy trial purposes, the clock stops when the trial begins. The district court did not err in denying the motion to dismiss for violation of the Speedy Trial Act.

Additionally, our review of the record reveals sufficient evidence to support the jury verdicts. *United States v. Bell,* 678 F.2d 547 (5th Cir. Unit B 1982). Accordingly, the convictions are affirmed.

**AFFIRMED.**