**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**George DAVIS and William E. Newsome, Defendants-Appellants.**

**No. 86–8154
Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 22, 1986.

William T. Payne, Court appointed, Atlanta, Ga., for George Davis.

John Oliver Ellis, Jr., Atlanta, Ga., for Newsome.

Thomas D. Bever, Asst. U.S. Atty., Atlanta, Ga., for United States.

Before RONEY, Chief Judge, HILL and KRAVITCH, Circuit Judges.

PER CURIAM:

Appellants George Davis and William Newsome were convicted of various federal charges related to the theft, interstate transportation, and sale of a tractor-trailer rig and its contents. On appeal, they contest the admission into evidence of recorded telephone conversations, the instruction given to the jury regarding their entrapment defenses, and the adequacy of proof of the monetary value of the contents of the truck. They further challenge as improperly multiplicitous various combinations of the several counts for which they were indicted, convicted, and sentenced.

We reject appellants' claims regarding the telephone recordings, the jury charge, and the proof of value of the stolen merchandise; we conclude, moreover, that appellants are procedurally barred from challenging on appeal the multiplicity of their convictions. Accordingly, we affirm the convictions. Nevertheless, we agree with appellants that one of the counts for which they received separate sentences is unduly multiplicitous of another count. Hence we remand to the district court to vacate the sentence as to this count.

## I. BACKGROUND

On September 27, 1985, Michael Wright, a paid FBI informant, received a telephone call from appellant Davis concerning the delivery and sale of tractor-trailer rigs that were to be stolen. Wright was at FBI headquarters in Atlanta when he received the call, which was recorded by means of an attachment to the telephone receiver. During the conversation, Davis stated that appellant Newsome would drive one stolen truck to Atlanta, and that Davis could deliver another truck if Wright could provide a driver. Wright handed the telephone to undercover FBI agent George Murray, who also spoke with Davis.

Two days later, Newsome called Wright and Murray to inform them that he had stolen a truck the night before and that he was in South Carolina, two hours away from Atlanta. Murray then called Davis from Wright's apartment to inform him of

the communication with Newsome. Wright also spoke with Davis regarding Davis' payment for the truck Newsome was driving as well as the possibility of future deliveries. This call to Davis was recorded.

Later that day, Wright, Murray, and another FBI undercover agent met Newsome at an Atlanta parking lot. Upon opening the truck Newsome had delivered, they discovered that it contained school composition books. Newsome explained that he had not had a chance to look at the merchandise, but that he could steal a refrigerated trailer of meat in the near future. When Newsome went to Murray's car for payment, he was arrested.

Wright and Murray then called Davis to tell him that Newsome had arrived with the tractor-trailer, but that it contained only school books. Davis confirmed that Newsome could deliver future loads and stated that he would accept $3,000 for his payment for the delivered truck. This call also was taped.

Four days later, Davis again called Wright at FBI headquarters in Atlanta to explain that he had not heard from Newsome. During this conversation, which also was taped, Wright told Davis that he would wire Davis some money that day. Davis was arrested when he went to collect the money at the Western Union office in Scranton, Pennsylvania.

Davis and Newsome were named in an eight-count indictment that charged, pursuant to 18 U.S.C. §§ 371, 659, 2312, 2314, and 2315, conspiracy and substantive violations involving the theft, transportation, possession, and sale of a tractor-trailer truck and 22,000 school books. They were tried and convicted on all counts but one, which was dismissed by the government at the close of evidence. Davis was sentenced to five years in custody on the conspiracy count. He also received concurrent five-year sentences for the remaining counts, with execution suspended and probation imposed following his confinement. Newsome received concurrent sentences of five years on four of the counts and ten years on three of the others, with execution suspended and probation imposed.

## II.  ANALYSIS

On appeal, Davis and Newsome present four claims challenging their convictions and sentences.

### A.  *Admissibility of the Recorded Telephone Conversations*

Appellants first contend that the recorded telephone conversations between Davis and FBI informant Wright were improperly admitted into evidence because the government failed to establish that Wright consented to the recordings. They argue that the recordings were inadmissible under the Federal Rules of Evidence and Title III of the Omnibus Crime Control Act of 1968, 18 U.S.C. § 2510, *et seq.*, because the government neither called Wright to testify nor demonstrated his unavailability as a foundation for FBI agents' hearsay testimony regarding Wright's consent. We disagree.

◼ Title III of the Omnibus Crime Act prohibits the admission of evidence gathered by the unlawful interception of a wire or oral communication. 18 U.S.C. § 2515. The act provides, however, that it is not unlawful "for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c). Although the burden of proving consent is on the government, *see United States v. Napier*, 451 F.2d 552, 553 (5th Cir.1971), such proof need not consist of testimonial evidence. The burden also can be met by circumstantial evidence showing that an informant placed the telephone call knowing that the call would be recorded. *United States v. Kolodziej*, 706 F.2d 590, 593 (5th Cir.1983); *United States v. Bonanno*, 487 F.2d 654, 658 (2d Cir.1973); *cf. United States v. Fuentes*, 563 F.2d 527, 533 (2d Cir.1977) (recorder placed on informant).

◼ Here, overwhelming circumstantial evidence demonstrated Wright's consent to the recordings. A paid informer, Wright himself notified the FBI of Davis' plan to steal and sell tractor-trailer trucks. He was in FBI headquarters for both the first

and the last recorded conversation with Davis, and actively participated with agent Murray in the others. Moreover, Wright's conversations with Davis occurred over a period of several days, thus providing Wright ample opportunity to reconsider his decision to cooperate with the FBI. Appellants do not contend that Wright did not, in fact, consent to the recordings, nor does any evidence suggest that Wright's participation in the recording conversations was either unknowing or nonvoluntary. Given the circumstantial proof of consent, additional testimonial evidence was not necessary for the government to meet its burden.

### B. *Market Value of the Stolen School Books*

■ Appellants' second contention is that the government failed to prove that the school books contained in the stolen tractor-trailer truck exceeded the $5,000 market value necessary to meet the jurisdictional requirements of 18 U.S.C. §§ 2314 and 2315. Appellants argue that the government failed to meet its burden of proving market value because no testimony was admitted into evidence placing a specific value on the books. Considering, as we must, the evidence in the light most favorable to the jury's verdict, *see United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983), we conclude that sufficient evidence was available for the jury reasonably to infer that the market value of the books exceeded $5,000.

The principal prosecution witness on the value of the stolen merchandise was Jack Henretta, an officer of the company that owned the stolen truck. Henretta was prevented from testifying as to the specific market value of the books when the court upheld defense objections based on Henretta's unfamiliarity with the merchandise. Henretta's testimony established, however, that this particular load of books was valued for insurance purposes for more than $15,000. He explained that in determining the value of a load of merchandise, the company looked to the actual costs paid by the shipper. Such evidence of valuation

for insurance purposes may in itself constitute sufficient evidence from which the jury might reasonably infer a value of $5,000. *See United States v. Tobin,* 576 F.2d 687, 693 (5th Cir.1978); *United States v. Wigerman,* 549 F.2d 1192, 1193 (8th Cir.1977); *cf. United States v. Highfill,* 340 F.Supp. 105, 106 (N.D.Iowa 1972) (insurance valuation insufficient where based only upon weight of merchandise with no correlation to actual market value). Here, additionally, one of the 22,000 stolen composition books was placed into evidence. Combined with the testimony regarding the insurance valuation, the jury could reasonably have inferred from the members' own knowledge of the costs of such a common item that the market value of the stolen merchandise exceeded $5,000.

### C. *Jury Instructions Regarding Entrapment*

■ Appellants next contend that the court improperly instructed the jury regarding their entrapment defense. Appellant Davis proposed a charge that would have instructed the jury to consider the several shifts, from government to defendant and back to the government, of the burdens of production and proof of various issues. Finding this proposed instruction unnecessarily confusing, the court instead issued the entrapment charge contained in the pattern jury instructions for this circuit.

■ This court previously has rejected the claim that an entrapment charge must detail the shifting burdens of production and proof inherent in the defense. *United States v. Smith,* 588 F.2d 111 (5th Cir. 1979). Although appellants' proposed charge perhaps is not without academic value for its analysis of the shifting burdens of the entrapment defense, its intricacies are of little merit as a means of instructing a jury in the law to be applied. Once the entrapment defense is properly before the jury, all the jury need decide is whether the government proved beyond a reasonable doubt that the defendant was predisposed to commit the crime. *See id.*

This the given charge did, simply and clearly.

### D. *Multiplicitous Convictions and Sentences*

Appellants' final contention is that they were improperly convicted and sentenced for multiplicitous charges. They claim that the transportation and sale of the stolen merchandise was part of the same transaction as the transportation and sale of the stolen truck, and, therefore, that convictions and sentences for both were improper. They similarly challenge the imposition of separate convictions and sentences for the transportation, the possession, and the sale of the truck.

 Because appellants failed to object prior to trial to multiplicity of counts apparent on the face of the indictments, they may not now object to their convictions on grounds of multiplicity. *United States v. Mastangelo,* 733 F.2d 793, 800 (11th Cir. 1984). They nevertheless may challenge on appeal the imposition of multiple sentences. *Id.*

Appellants contend that the imposition of multiple sentences exceeded the allowable "unit of prosecution" intended by Congress for the violations committed. *See, e.g., United States v. Universal C.I.T. Corp.,* 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952). We are not here confronted, however, with multiple sentences imposed under a single statute that is ambiguous as to the possibility of one action constituting multiple violations. *Cf. Universal C.I.T. Corp.; Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955); *Mastrangelo, supra.* Rather, we must consider whether multiple sentences were validly imposed for violations of separate statutes. On this point, the law is clear that multiple sentences may be imposed so long as one statute "requires proof of an additional fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932); *see, e.g., Albernaz v. United States,* 101 S.Ct. 1137, 450 U.S. 333, 67 L.Ed.2d 275 (1981).

Applying this standard, it is clear that appellants properly received separate sentences for the transportation and sale of the stolen goods as well as for the transportation and sale of the stolen tractor-trailer. Appellants are correct, however, in arguing that they should not have received separate sentences for the possession of the tractor-trailer as well as its transportation and sale. We accordingly remand their cases to the district court to vacate the sentences imposed on this count.

### III. CONCLUSION

The convictions of the appellants are affirmed. The sentences imposed on all counts, except count five, also are affirmed. We remand to the district court with directions to vacate the sentences imposed for count five.

AFFIRMED in part, REMANDED in part.