United States Court of Appeals,

Eleventh Circuit.

No. 93-8394.

UNITED STATES of America, Plaintiff-Appellee,

v.

Alan KING and Bruce Rickard, Defendants-Appellants.

Feb. 6, 1996.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:92-CR-206-02-ODE), Orinda D. Evans, Judge.

Before TJOFLAT, Chief Judge, CARNES, Circuit Judge, and FAY, Senior Circuit Judge.

CARNES, Circuit Judge:

Alan King and Bruce Rickard appeal their convictions and sentences stemming from the purchase of a kilogram of cocaine from an undercover police detective. Both defendants were convicted for attempting and conspiring to possess with intent to distribute cocaine, and for using or carrying a firearm in connection with a drug trafficking offense. For the reasons discussed below, we affirm both defendants' convictions and sentences for the attempt and conspiracy offenses, but we reverse their convictions and vacate their sentences for the firearm offenses.

## I. BACKGROUND

Beginning in February 1992, Scott Gandy, an informant for the government, who was facing drug charges, attempted to arrange a drug transaction with Defendant King. Although Gandy and King had known each other for approximately twenty years, King twice declined to get involved in a drug transaction with Gandy, possibly because King was suspicious that Gandy was an informant.

Eventually, King agreed to meet with Gandy's "friend," Detective Baxley of the Roswell Police Department, who was posing as a cocaine seller.  On June 1, 1992, in Gandy's basement, King and Baxley met and discussed the terms of the proposed cocaine sale. King agreed to purchase a kilogram of cocaine from Baxley, and told him that if King's "money man" liked the cocaine King would purchase additional quantities.  During the meeting, King placed a telephone call to his "money man," whom King referred to as "Bruce," and told the money man "[e]verything is a go" and to "[g]et your money together" or words to that effect.  Later that evening, King paged Baxley and asked him to bring the cocaine over.

The next day, June 2, Baxley went to King's basement apartment to sell him the kilogram of cocaine.  King let Baxley into his apartment, and Baxley asked to see the money.  King went around the corner toward his bedroom, spoke with another male briefly, and then reappeared with five stacks of currency.  Baxley then retrieved a fake kilogram of cocaine from his car, and placed it inside a newspaper held by King.  King took the fake cocaine, still wrapped in the newspaper, inside.  Shortly thereafter, King was arrested.  Defendant Rickard, the only other male in the house, was arrested "in the immediate vicinity" of King's bedroom, in which there was a triple beam scale on the dresser, a loaded .45 caliber handgun between the mattress and box spring of the bed, and the fake kilogram of cocaine in the closet.  Rickard's fingerprint was on the fake kilogram of cocaine.  Twenty-five thousand dollars was seized from the living room.

In August 1992, a grand jury indicted King and Rickard on

three counts each. Count 1 charged each defendant with attempting to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 2 and 846. Count 2 charged each defendant with conspiring to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. Count 3 charged each defendant with using or carrying a firearm in connection with a drug trafficking offense in violation of 18 U.S.C. §§ 2 and 924(c).

At trial, both defendants made several motions for judgments of acquittal, all of which the district court denied. In January 1993, a jury convicted both King and Rickard on all three counts. King was sentenced to 123 months of incarceration, four years of supervised release, and a $150 special assessment. Rickard was sentenced to 168 months of incarceration, a $2,500 fine, four years of supervised release, and a $150 special assessment. Both King and Rickard appeal their convictions and sentences, each raising several issues.

## II. DISCUSSION

A. THE § 924(c) ISSUE

King and Rickard argue that the evidence was insufficient as a matter of law to sustain their convictions under 18 U.S.C. § 924(c). Both defendants timely raised the issue at trial in several motions for judgments of acquittal on Count 3, all of which the district court denied. Since the trial, the Supreme Court has clarified the meaning of "uses" as that term is employed in § 924(c). *See Bailey v. United States,* --- U.S. ----, 116 S.Ct. 501, --- L.Ed.2d ---- (1995).

Section 924(c)(1) provides for a five-year minimum

imprisonment for a person who "during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm." 18 U.S.C.A. § 924(c)(1) (West 1995). In *Bailey,* the Supreme Court reversed two convictions under § 924(c), holding that the evidence was insufficient to support either conviction under the "use" prong. --- U.S. at ----, 116 S.Ct. at 509. The Court held that "the language, context, and history of § 924(c)(1) indicate that the Government must show active employment of the firearm" to establish "use." *Id.* at ----, 116 S.Ct. at 506. As applied to the two convictions in *Bailey,* the Court held that "a firearm inside a bag in the locked car trunk" and one "locked in a footlocker in a bedroom closet" did not constitute active employment. *Id.* at ----, 116 S.Ct. at 509. The Court in *Bailey* did not consider the "carry" prong of § 924(c). *Id.*

Applying *Bailey,* we hold that a firearm found between a mattress and box spring in a bedroom next to the room where most of the drug trafficking crime occurred does not constitute the type of "active employment of the firearm" that is necessary for a conviction under the "use" prong of § 924(c)(1). That is true even though the drugs being purchased (here, the fake drugs) ended up in the same room with the gun. Whatever the law in this circuit may have been prior to *Bailey,* it is now clear that the mere "conceal[ment] [of] a gun nearby to be at the ready for an imminent confrontation" absent the "disclos[ure] or mention[ ] by the offender" cannot form the basis for a conviction under the "use" prong of § 924(c)(1). *Id.* at ----, 116 S.Ct. at 508. The government concedes the point in a post-*Bailey* supplemental

authority letter.

The government also concedes that the Count 3 convictions cannot be upheld under the "carry" prong of the statute because, in its words, "the trial court did not instruct the jury on the "carry' prong of 18 U.S.C. § 924(c), and the government did not object to the § 924(c) instruction." In light of that concession, we need not decide whether the evidence would have supported a conviction under the "carry" prong had that theory been presented to the jury. Accordingly, we reverse King's and Rickard's convictions under Count 3 of the indictment, and vacate the sentences imposed upon them pursuant to that count.

B. KING'S OTHER ISSUES

King argues that he was entrapped as a matter of law, and that the district court erred in submitting the entrapment issue to the jury instead of granting a judgment of acquittal on all three counts. King also argues that the district court's jury instruction on entrapment was inadequate because it did not specifically state that the government must prove predisposition beyond a reasonable doubt, and that the court should have given the additional entrapment instructions King requested, which would have done that.[1]

**1. The Entrapment as a Matter of Law Issue**

King moved for a judgment of acquittal on all three counts, arguing that he was entrapped as a matter of law. The district court denied his motion, and submitted the entrapment issue to the

---

[1]King also makes several other arguments on appeal, all of which we reject without further discussion.

jury. King contends that the district court's refusal to grant his motion for judgment of acquittal was error under the Supreme Court's holding in *Jacobson v. United States,* 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992).

In *Jacobson,* the Supreme Court explained the government's burden of proof in an entrapment case: "Where the government has induced an individual to break the law and the defense of entrapment is at issue ... the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents." *Id.* at 548-49, 112 S.Ct. at 1540. In *Jacobson* itself, the Court held that "the Government did not prove that this predisposition was independent and not the product of the attention that the Government had directed at petitioner...." *Id.* at 550, 112 S.Ct. at 1541.

Applying *Jacobson,* in *United States v. Brown,* 43 F.3d 618 (11th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 309, 133 L.Ed.2d 212 (1995), we observed that "[e]ntrapment is generally a jury question," and "[t]herefore, entrapment as a matter of law is a sufficiency of the evidence inquiry." *Id.* at 622 (citations omitted); *see also Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988) (holding that "the question of entrapment is generally one for the jury, rather than for the court"). Our inquiry is "whether the evidence was sufficient for a reasonable jury to conclude that the defendant was predisposed to take part in the illicit transaction." *Brown,* 43 F.3d at 622 (citing *United States v. Aibejeris,* 28 F.3d 97, 99 (11th

Cir.1994)). Although our review of an entrapment defense is *de novo,* "we must view all facts and make all inferences in favor of the government." *Id.*

King's primary argument is that *Jacobson* requires the government to have evidence of predisposition before it begins its investigation of the defendant. This Court disposed of that contention in *Aibejeris,* where we held:

> This is an incorrect reading of *Jacobson.* That case does not stand for the proposition that the government must have evidence of predisposition prior to investigation. Rather, *Jacobson* holds that the government must prove at trial beyond a reasonable doubt that the defendant was *actually* predisposed to commit the underlying crime absent the government's role in assisting such commission.

28 F.3d at 99. Accordingly, it matters not when the evidence of King's predisposition to sell drugs was developed. It does matter whether that predisposition itself existed before the government became involved.

Turning to the sufficiency of the evidence of predisposition, we hold that there was enough evidence that King was predisposed, independent of any government involvement, to commit the crimes for which he was convicted to create a jury question. A reasonable jury could have believed Gandy's testimony that prior to Gandy becoming an informant, King had provided narcotics to Gandy on more than one occasion. Likewise, a reasonable jury could also have believed Gandy's testimony that during the time Gandy was acting as an informant, King was dealing drugs with others but refused to deal with Gandy because King was suspicious that Gandy was an informant. Finally, a reasonable jury could have believed Gandy's testimony that even though Gandy made his first offer to engage in

drug transactions with King on March 29, 1992, King had told Gandy on February 14, 1992, that "Alphonso" was coming from Florida with two "killer" kilograms of cocaine. All of this evidence supports the conclusion that King was predisposed to commit the crime, independent of any government involvement. Unlike the situation in *Jacobson,* much of the evidence about predisposition in this case was evidence of the defendant's conduct and statements prior to the government's involvement, and therefore was "independent and not the product of the attention that the Government ... directed at [the defendant]," *see Jacobson,* 503 U.S. at 550, 112 S.Ct. at 1541. We hold that the district court properly denied the defendant's motion for judgment of acquittal as to Counts 1 and 2, and properly submitted the entrapment defense to the jury.

## 2. The Entrapment Jury Instruction Issue

The district court gave the Eleventh Circuit pattern jury instruction on entrapment, which King requested, but did not give the additional entrapment instructions requested by King. In particular, King sought to have the jury instructed separately and specifically that when the defendant shows government inducement existed, the burden shifts to the government to prove beyond a reasonable doubt that the defendant was not entrapped. King claims that the lack of such a specific instruction was reversible error, given the Supreme Court's recent statement in *Jacobson* that "the prosecution must prove beyond a reasonable doubt that the defendant was disposed to commit the criminal act prior to being approached by Government agents." *Jacobson,* 503 U.S. at 549, 112 S.Ct. at 1540. King argues that *Jacobson* changed the law so that when

government inducement exists, the government now bears the burden of proving beyond reasonable doubt that the defendant was not entrapped, and any pre- *Jacobson* holdings on this issue are no longer good law.

The pattern entrapment instruction given by the district court states that "if the evidence in the case leaves you with a reasonable doubt whether the Defendant had any intent to commit the crime except for inducement or persuasion on the part of some Government officer or agent, then it is your duty to find the Defendant not guilty."  In addition to the pattern instruction on entrapment, the court also gave the general pattern instruction on the government's burden of proof in criminal cases, which states that the government must prove each element of the offenses beyond reasonable doubt.

The government argues that the pattern entrapment instruction was sufficient.  First, the government contends that *Jacobson* did not alter the well-established law that when government inducement exists, the burden is on the government to prove predisposition beyond reasonable doubt.  We agree.  To begin with, *Jacobson* only incidentally dealt with the reasonable doubt issue;  the central concern of the decision was the temporal frame regarding the defendant's predisposition.  In particular, *Jacobson* held that the government must prove that the defendant was disposed to committing the criminal act *prior* to being approached by government agents.  Although one clause from the *Jacobson* opinion does state that a defendant's predisposition must be proven beyond reasonable doubt, that clause simply restated well-established entrapment law

regarding the burden of proof.  *See, e.g., United States v. Vadino,* 680 F.2d 1329, 1337 (11th Cir.1982) (stating that government bears burden of proof beyond reasonable doubt in entrapment case), *cert. denied,* 460 U.S. 1082, 103 S.Ct. 1771, 76 L.Ed.2d 344 (1983); *United States v. Smith,* 588 F.2d 111, 116 n. 25 (5th Cir.) (same), *modified on other grounds,* 594 F.2d 1084 (1979);  *United States v. Benavidez,* 558 F.2d 308, 310 (5th Cir.1977) (same);  *United States v. Silver,* 457 F.2d 1217, 1220 (3d Cir.1972) (referring to fact that burden of proof beyond reasonable doubt is on government in entrapment case as a "settled principle[ ]").  Thus *Jacobson* dealt with *what* the government must prove beyond a reasonable doubt once inducement is shown in an entrapment case;  but it did not change the law that the government, not the defendant, bears that burden of proof once inducement is shown.  That has long been the law.

Second, the government argues that because *Jacobson* did not change the law regarding the burden and standard of proof in an entrapment case, this Court's prior decisions upholding the pattern entrapment instruction, as well decisions upholding virtually identical instructions, against similar challenges are binding upon this panel.  *See United States v. Davis,*  799 F.2d 1490, 1493-94 (11th Cir.1986) (upholding pattern entrapment instruction as "simply and clearly" instructing the jury about the government's burden of proof beyond a reasonable doubt, despite defendant's contention that instruction must "detail the shifting burdens of production and proof");  *United States v. Sonntag,* 684 F.2d 781, 787 (11th Cir.1982) (upholding virtually identical entrapment instruction against challenge that instruction was "deficient

because it fails to unequivocally state that the government has the burden of proving beyond a reasonable doubt that the defendant was not entrapped"); *Vadino,* 680 F.2d at 1337 (upholding virtually identical entrapment instruction against challenge that instruction should specifically state that the burden of proving that the defendants were not entrapped was on the government). Again, we agree. *See, e.g., Cuban Am. Bar Ass'n. v. Christopher,* 43 F.3d 1412, 1424 n. 9 (11th Cir.) (subsequent panel is bound by precedent established by prior panel), *cert. denied,* --- U.S. ----, 115 S.Ct. 2578, 132 L.Ed.2d 828 (1995).

As part of his argument that *Jacobson* changed the law regarding the burden or standard of proof in entrapment cases and that our pre-*Jacobson* holdings are thereby invalid, King argues that our post-*Jacobson* decision in *Brown* casts doubt on those prior holdings. *Brown* upheld the pattern entrapment instruction against a challenge that the instruction did not sufficiently inform the jury that the defendant's predisposition must have existed before any contact with government officers or agents. Even so, King contends that *Brown* supports his position that the pattern entrapment instruction was insufficient. In particular, King points to certain statements in a footnote in which we observed that, "it is not difficult to imagine a case where the Eleventh Circuit pattern instruction could mislead the jury," and that "other circuits have clarified their entrapment instructions in light of *Jacobson.*" *Brown,* 43 F.3d at 628 n. 8. However, the remainder of the footnote, which King does not acknowledge, makes clear that in *Brown* we were referring to an issue wholly distinct

from the present one. The remainder of the footnote explains that, in "long and complex government campaign[s]," like that occurring in *Jacobson,* "extra clarity [beyond that provided by the pattern instruction] would be required to keep the *temporal frame* in focus." *Brown,* 43 F.3d at 628 n. 8 (emphasis added). This reference to "temporal frame" makes clear that the footnote in question addressed only the particular issue raised in the *Brown* case: whether the pattern entrapment instruction sufficiently instructed the jury that the defendant's predisposition must have existed before any contact with government officers or agents. The *Brown* opinion does not address the present issue, which is whether the pattern entrapment instruction sufficiently instructed the jury that when government inducement is demonstrated, the burden is on the government to prove predisposition beyond reasonable doubt. Therefore, *Brown* could not cast any doubt on the continuing validity of any prior decisions on that issue.

We hold that our pre-*Jacobson* decisions upholding the pattern entrapment instruction against challenges that it fails to adequately address the burden and standard of proof, *see Davis,* 799 F.2d 1490; *Sonntag,* 684 F.2d 781; *Vadino,* 680 F.2d 1329, are still good law. No additional instruction that the burden is on the government to prove predisposition beyond a reasonable doubt is required to comply with *Jacobson.* Our conclusion is the same as that of the *Vadino* Court: although it may "have been better to include within the entrapment instruction itself an instruction on burden of proof, the jury instruction considered as a whole was sufficient." 680 F.2d at 1337.

C. RICKARD'S OTHER ISSUES

Rickard argues that the district court erred in refusing, on
hearsay grounds, to admit certain post-arrest statements of King,
that were exculpatory of Rickard.[2]  At trial, Rickard sought to
have King's post-arrest statements admitted as exceptions to the
hearsay rule, under Federal Rules of Evidence 803(1), (2), and
(24), and 804(b)(3).  After hearing extensive arguments from all of
the parties, the district court granted the government's motion in
limine to exclude King's post-arrest statements.  Although Rickard
wished to make further arguments at that time, the court stated
that it needed to "move ahead," and that "if counsel feel at a
certain point that they should be entitled to ask about [King's
post-arrest statement], bring it up outside the jury's presence and
[the court] will reconsider it."  Thereafter, during the trial, the
court did hear additional argument and reconsider whether to admit
King's post-arrest statements, but the court decided not to do so.

On appeal, Rickard raises a new argument for the admission of
King's post-arrest statements—that those statements should have
been admitted for the limited purpose of impeaching, in accordance
with Federal Rule of Evidence 806, statements made by King that
tended to incriminate Rickard.  Certain pre-arrest statements made
by King that tended to incriminate Rickard were admitted, over
Rickard's objection, under the co-conspirator exception to the
hearsay rule.  *See* Fed.R.Evid. 801(d)(2)(E).  Rickard now argues
that King's post-arrest statements should have been admitted under

------

[2]Rickard raises several other arguments on appeal, all of
which we reject without further discussion.

Rule 806, because that rule allows a party to attack or support the credibility of a hearsay declarant "by any evidence which would be admissible for those purposes if [the] declarant had testified as a witness." Rickard's argument is that because King's post-arrest statements exculpating King would have been admissible as prior inconsistent statements had King actually testified to the Rule 801(d)(2)(E) statements incriminating Rickard, those post-arrest statements should have been admitted under Rule 806 even though King did not take the stand. The argument appears to have merit, but it comes too late.

Rickard's theory for the admission of King's post-arrest statements under Rule 806 was not even suggested at trial,[3] and is thus "a new, previously unasserted basis for the admissibility of [the] evidence." *United States v. Grapp,* 653 F.2d 189, 194 (5th Cir. Aug. 10, 1981). "As a general rule, a reviewing court will only consider those matters first raised in the trial court." *Id.; see also United States v. Walther,* 867 F.2d 1334, 1343 (11th Cir.), *cert. denied,* 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 103 (1989); *United States v. Thompson,* 710 F.2d 1500, 1504 (11th Cir.1983), *cert. denied,* 464 U.S. 1050, 104 S.Ct. 730, 79 L.Ed.2d 190 (1984).

---

[3]Rickard contends that in the district court he sought to have King's post-arrest statements admitted under Rule 806. However, our thorough review of the record convinces us beyond doubt that Rickard did not argue for admission of King's post-arrest statements under Rule 806 or the ground contained therein, despite repeated opportunities to do so. *Cf. United States v. Madruga,* 810 F.2d 1010, 1014 (11th Cir.1987) ("We ought not, and do not, expect some sort of ritualistic incantation from trial lawyers to make an effective objection; but we can and do expect plain talk sufficient to direct the presiding officer's attention to the existence of an objection and to the specific ground that underlies the objection.").

When, as here, the proper basis for admission is not presented to the district court, we can review the court's evidentiary ruling only for plain error. *See, e.g., Walther,* 867 F.2d at 1343-44 (rejecting party's previously unasserted objection to evidence admitted at trial because not plain error); *see also* Fed.R.Crim.P. 52(b).

The Supreme Court has established a three-step process for analyzing plain error: (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights. *United States v. Olano,* 507 U.S. 725, ----, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993); *see also, United States v. Vazquez,* 53 F.3d 1216 (11th Cir.1995). "If these three prongs are met, we then have the discretion to correct the error, and we should do so if that error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " *Vazquez,* 53 F.3d at 1221 (quoting *Olano,* 507 U.S. at ----, ----, 113 S.Ct. at 1776, 1779) (alteration in original). The plain error test is "difficult to meet," and its "purpose ... is to enforce the requirement that parties object to errors at trial in a timely manner so as to provide the trial judge an opportunity to avoid or correct any error, and thus avoid the costs of reversal." *United States v. Sorondo,* 845 F.2d 945, 948-49 (11th Cir.1988) (quoting *United States v. Chaney,* 662 F.2d 1148, 1151 n. 4 (5th Cir. Unit B 1981)).

We need not discuss the entire plain error test because the second prong of the test—that the alleged error be plain—is not met. The Supreme Court has stated that " "[p]lain' is synonymous with "clear' or, equivalently, "obvious.' " *Olano,* 507 U.S. at ---

-, 113 S.Ct. at 1777.  The government argues that even assuming that the district court's refusal to admit King's post-arrest statements was error, the error was not plain because Rickard failed to even indirectly raise the Rule 806 basis for the statements' admission despite repeated opportunities to do so.

We agree with the government that Rickard's failure throughout the trial to argue even indirectly the basis he now asserts for the statements' admission, despite repeated opportunities to do so, indicates that the error, if any, is not plain.  This is not a situation where, due to lack of attention or the pace of events, ground was skipped over.  Instead, Rickard's counsel focused considerable energy on getting King's post-arrest statements into evidence, and in her arguments to the district court she thoroughly plowed the ground for admissibility, but did not raise the basis she now asserts.  The district court heard from counsel before trial, correctly rejected every basis of admissibility she argued, invited her to return to the matter as it arose during the trial, heard from her again, and again correctly rejected every proffered basis for admissibility.[4]  If the error in not admitting the hearsay statements had been "plain," as the plain error rule requires, then Rickard's counsel, who is quite experienced in federal criminal defense work, and who focused at some length upon the matter, would have recognized the basis for admissibility and

---

[4]Rickard also argues that the district court's refusals to admit King's post-arrest statements based upon the grounds Rickard raised at trial—Rules 803(1), (2), and (24), and 804(b)(3)—were abuses of discretion.  We conclude that these arguments are without merit and do not require further discussion.

brought it to the attention of the district court.  She did not. To apply the plain error exception to the contemporaneous objection rule in such circumstances would lead to the exception swallowing the rule, much to the detriment of the important values protected by the rule.  Accordingly, we hold that the district court did not commit plain error in refusing to admit the statements.

### III. CONCLUSION

We AFFIRM King's and Rickard's convictions and sentences on Counts 1 and 2, but REVERSE their convictions and VACATE their sentences on Count 3.  We REMAND the case to the district court for further proceedings consistent with this opinion.