**UNITED STATES of America,**

v.

**Stephen Thomas WARREN.**

Nos. 89–13–CR–T–17, 96–398–CIV–T–17B.
Appeal No. 96–3345.

United States District Court,
M.D. Florida,
Tampa Division.

April 25, 1997.

Linda S Sheffield, Law Office of Linda S. Sheffield, Atlanta, GA, Robert Paul Polli, Robert Paul Polli, P.A., Tampa, FL, for defendant.

Charles Wilson, U.S. Attorney, Walter E. Furr, Asst. U.S. Atty., Dennis Moore, Asst. U.S. Atty., U.S. Attorney's Office Middle Dist. of Fla., Tampa, FL, for U.S.

### ORDER ON REMAND DENYING DEFENDANT'S SECTION 2255 MOTION

KOVACHEVICH, Chief Judge.

This cause comes before the Court on the following documents:

(1) Defendant STEPHEN THOMAS WARREN's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255 (Docket No. 251) (filed February 28, 1996);

(2) Defendant's Memorandum of Law in Support (Docket No. 252) (filed February 28, 1996);

(3) Government's Response (Docket No. 259) (filed April 18, 1996);

(4) Defendant's Reply to Government's Response (Docket No. 275) (filed June 4, 1996);

(5) Government's Response to Defendant's Supplemental Reply (Docket No. 277) (filed June 11, 1996);

(6) Order Denying Defendant's Section 2255 Motion (Docket No. 283) (filed September 10, 1996), *vacated by* this Court in its Initial Order on Remand from the Circuit Court (Docket No. 306) (filed March 19, 1997);

(7) Defendant's Request for Certificate of Appealability (Docket No. 296) (filed January 10, 1997);

(8) District Court's Request for Remand from the Circuit Court (Docket No. 297) (filed January 16, 1997), *granted by* Appeal No. 96–3345, Opinion from Hatchett, C.J., and Edmondson, J., dated March 13, 1997 (Docket No. 305) (filed in this Court March 17, 1997); and

(9) Superseding Memorandum of the Defendant (Docket No. 314) (filed April 11, 1997), as invited by this Court in its Initial Order on Remand (Docket No. 307). The Government was also invited to submit a superseding memorandum but, to date, it has not made such a filing.

## FACTS

On February 7, 1989, the defendant STEPHEN THOMAS WARREN was indicted by a federal grand jury on three (3) counts: (1) conspiracy to possess with intent to distribute five hundred (500) grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846; (2) possession with intent to distribute five hundred (500) grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2; and (3) using and carrying a firearm, to wit: a Glock 9mm handgun, Serial # DH206US, and a Smith and Wesson .357 caliber revolver, Serial # SN41113, during and in relation to a drug trafficking offense, including those charged in counts one (1) and two (2), in violation of 18 U.S.C. § 924(c). The indictment also charged co-defendants JOSE FELIX RODRIGUEZ, MICHAEL DIGALARAMO, and EARL CHARLES LYNCH with these same crimes.

On March 30, 1990, the defendant WARREN was sentenced by this Court on counts one (1) and three (3) after his guilty pleas were accepted on those counts. (Judgment and Commitment Order, Docket No. 220). The Court dismissed count two (2) upon motion from the Government. The Court imposed the following and other penalties on the defendant WARREN: (1) 92 months imprisonment as to count one (1); (2) 60 months imprisonment as to count two (2), to run consecutive to count one (1) (both with credit for time served); and (3) upon release from prison, four (4) years of supervised release as to Count One (1). The defendant WARREN did not appeal his conviction or sentence.

At sentencing, the Court adopted, as its findings of fact, the factual statements contained in the presentence investigation report, to which there were no objections advanced by either party. In the present cause, there remain no material factual disputes. As such, an evidentiary hearing is unnecessary, and the Court incorporates by reference paragraphs one (1) through twenty-six (26) of the presentence investigation report into this Order by specific reference herein. These facts include the following (not using the same paragraph numbers):

(1) Co-Defendant RODRIGUEZ pled guilty to all three (3) counts on April 20, 1989. This Court denied his section 2255 motion by Order filed on May 30, 1996 (Docket No. 273).

(2) Co-Defendant DIGALARAMO pled guilty to all three (3) counts on April 24, 1989. This Court denied his section 2255 motion by Order filed on January 16, 1996 (Docket No. 247).

(3) Co-Defendant LYNCH was convicted by a jury on counts one (1) and two (2), but acquitted on count three (3). The verdict was returned on June 19, 1989. This Court denied his section 2255 motion by Order filed on January 25, 1994 (Docket No. 243).

(4) On January 14, 1989, the defendant WARREN contacted an undercover officer to offer cocaine for sale. The undercover officer told him that he would buy three (3) to four (4) kilograms of cocaine depending upon the price. The defendant WARREN explained that he would complete the transaction in Tampa, Florida, because the people who were supplying the cocaine resided there. The defendant WARREN agreed to travel to Tampa to see the money and make arrangements for the cocaine to be delivered.

(5) Later that day, the defendant WARREN arrived in Tampa by a commercial airliner and was picked up at the airport by the undercover officer who took him to a place in Tampa where a second undercover officer was waiting to show him the money, which the defendant WARREN counted to be approximately $67,000.00.

(6) After a series of discussions and phone calls, the undercover officer and the defendant WARREN traveled to LYNCH's residence located at 4717 Lawn Avenue in Tampa for the purpose of purchasing three (3) kilograms of cocaine. Once in the house, the undercover officer was introduced to co-defendants LYNCH and DIGALARAMO. DIGALARAMO told the undercover officer and WARREN that the anonymous supplier, co-defendant RODRIGUEZ, had not yet arrived with the cocaine, but was due at any time. DIGALARAMO, LYNCH and the defendant WARREN instructed the undercover officer to leave the home because RODRIGUEZ did

not want to meet him. WARREN told the undercover officer that he would telephonically contact him when the cocaine was ready.

(7) Later, as instructed by the defendant WARREN, the undercover officer returned to the residence in order to drive WARREN to his motel room. The defendant WARREN stated that RODRIGUEZ wanted to complete the transaction within the residence.

(8) The undercover officer refused to bring the money to the residence. The defendant WARREN assured the undercover officer that there was not going to be a "rip-off," because the house had guns, was guarded by pit bulldogs, and had an electric fence.

(9) The undercover officer continued to refuse to go to the residence and returned to the motel. Apparently back at the motel, the defendant WARREN explained to him that he had observed one (1) kilogram of cocaine within the residence and again assured him there was nothing to worry about.

(10) The undercover agent then arranged to leave the defendant WARREN at the motel. The undercover officer was to pick up the money for one (1) kilogram of cocaine return to the motel to pick up the defendant WARREN, and then go to the residence to purchase the cocaine.

(11) At approximately 1:20 a.m. on January 15, 1989, RODRIGUEZ departed the residence and was arrested by FBI and local police agents about one (1) block away.

(12) Approximately ten (10) minutes later, the defendant WARREN was arrested at the motel. Co-defendants LYNCH and DIGALARAMO were arrested within the residence.

(13) After his arrest, DIGALARAMO stated that he was given a firearm, apparently in the residence, to make sure the drug transaction was completed properly. Co-defendants LYNCH and WARREN were present at the time of the firearm's delivery.

(14) A lawful search of the residence revealed cocaine and four (4) firearms, including the Glock 9mm handgun and the Smith and Wesson .357 caliber revolver, as listed in the indictment. The Glock handgun, which was fully loaded, was in plain view and within the immediate reach of persons in the living room area. The Smith and Wesson revolver, which was loaded with six (6) live rounds, was also located in the living room area. The defendant WARREN was not present in the residence at the time the firearms were discovered.

## DISCUSSION

At issue is the defendant WARREN's criminal liability for 18 U.S.C. § 924(c)(1). Although he pled guilty to this crime, the defendant argues that his continued incarceration violates the Due Process clause, U.S. Const. amend. V, because his plea lacked a factual basis under a retroactive application of *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

■ As a threshold matter, the Court agrees with the defendant that, in order for a plea to be valid, "there must be evidence from which a court could reasonably find that the defendant was guilty-a factual basis for the plea." *United States v. Owen,* 858 F.2d 1514, 1515 (11th Cir.1988). Although *Owen* involved a direct, rather than collateral, appeal of a guilty plea, the Government itself has effectively conceded, before this Court in another case, that the above-quoted rule of law applies equally to section 2255 motions. *See United States v. James O. Johnson,* No. 89–161–CR–T–17C (M.D.Fla. Nov. 1, 1996) (Kovachevich, C.J.). Therefore, without any present, serious argument to the contrary, the Court will apply *Owen.*

■ Under federal law, "[w]hoever, during and in relation to any ... [federal] drug trafficking crime uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five [5] years." 18 U.S.C. § 924(c)(1). Thus, "[u]nder § 924(c), the Government must prove that the defendant (1) committed the underlying offense, and (2) knowingly used or carried a firearm during and in relation to that crime." *United States v. Dean,* 59 F.3d 1479, 1489 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 794, 133 L.Ed.2d 742 (1996).

Readily apparent from the face of the statute, a defendant's criminal liability under section 924(c)(1) may be based on either the "use" or "carry" prong, even where, as here, the defendant was charged in the conjunctive. *United States v. Range*, 94 F.3d 614, 619 (11th Cir.1996); *see also United States v. Burton*, 871 F.2d 1566, 1573 (11th Cir.1989). Because the defendant WARREN does not contest his criminal liability for the underlying offense, conspiracy to possess with intent to distribute cocaine, the Court will analyze whether WARREN "used" or "carried" a firearm during and in relation to the conspiracy.

*I. Use.*

The Court concludes that the defendant WARREN's guilty plea possessed a factual basis to support a finding of "use." The seminal case on "use" of a firearm is, of course, *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). In the first of two underlying cases, "[t]he police stopped Bailey for a traffic offense and arrested him after finding cocaine in the driver's compartment of his car. The police then found a firearm inside a bag in the locked car trunk." *Id.* at ——, 116 S.Ct. at 509. In the second underlying case, the police found an "unloaded, holstered firearm ... locked in a footlocker in a bedroom closet," which remained in that location during Robinson's attempted sales of crack cocaine out of her apartment. *Id.* Both Bailey and Robinson were charged with and convicted for, among other offenses, using and carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1).

Concluding that Bailey and Robinson did not "use" any firearms, the Supreme Court held that " § 924(c)(1) requires evidence sufficient to show an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Id.* at ——, 116 S.Ct. at 505. Mere possession, or the inert presence, of a firearm is not active employment. *Id.* at ——, ——, 116 S.Ct. at 506, 508. Rather, active employment means, for example, "brandishing, displaying, bartering,

striking with, and most obviously, firing or attempting to fire, a firearm." *Id.* at ——, 116 S.Ct. at 508. Further, "even an offender's reference to a firearm in his possession could satisfy § 924(c)(1)," if the reference is "calculated to bring about a change in the circumstances of the predicate offense...." *Id.*

In the present case, the defendant WARREN argues that he did not actively employ a firearm. He contends that his statement to the undercover officer that the residence was safe because it had guns was not "use" of a firearm. The Government's position is that the defendant WARREN's reference to guns satisfies the active employment requirement.

■ The Court agrees with the Government. The Supreme Court clearly stated in *Bailey* that a defendant's reference to a firearm in his possession that is calculated to bring about a change in the circumstances of the underlying offense could constitute "use." The defendant WARREN specifically told the undercover officer that LYNCH's residence was protected by "guns" and other weapons. He made this statement for the purpose of easing the undercover officer's purported concern about having his $67,000.00 "ripped off." Further, even though WARREN was at the motel, the guns located inside the residence were in WARREN's possession at the time he made that reference to firearms. Because his co-conspirators were within immediate reach of the firearms, WARREN at least had "both the power and the intention to later take control over [the firearms] either alone or together with someone else[.]" *Eleventh Circuit Pattern Jury Instructions* (defining the word "possession" to include actual, constructive, sole, and joint possession unless otherwise restricted).

Post-*Bailey* case law from this circuit is consistent with the instant conclusion. In *United States v. King*, the court reversed the § 924(c)(1) convictions of two (2) defendants, holding that "a firearm found between a mattress and box spring in a bedroom next to the room where most of the drug trafficking crime occurred does not constitute the type of 'active employment of the firearm' that is

necessary for a conviction under the 'use' prong of § 924(c)(1)." 73 F.3d 1564, 1567 (11th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 220, 136 L.Ed.2d 153 (1996). The court further stated that "the mere concealment of a gun nearby to be at the ready for an imminent confrontation *absent the disclosure or mention by the offender* cannot form the basis for a conviction under the 'use' prong. . . ." 73 F.3d at 1567 (internal quotations, citations, and alterations omitted) (emphasis added). Similarly, in *United States v. Jones,* the court reversed the § 924(c)(1) conviction of a defendant who kept a sawed-off shotgun in his bedroom closet that was within four (4) to seven (7) feet of crack cocaine and large amounts of cash. 74 F.3d 275, 276 (11th Cir.1996) (facts derived from 28 F.3d 1574. 1576–78 (11th Cir.1994)). The court concluded that, under *Bailey,* there was insufficient evidence that the defendant actively employed the firearm during and in relation to the crime of possession with intent to distribute crack cocaine. 74 F.3d at 276.

*King* and *Jones* are materially distinguishable from the present case. Unlike the defendant WARREN, the defendants in *King* and *Jones* did not specifically refer to the presence of firearms within their or their co-conspirators' possession in an effort to change the circumstances of their underlying offenses.

Therefore, under a retroactive application of the Supreme Court's interpretation of "use," the defendant WARREN's conviction and sentence for § 924(c)(1) satisfy the Due Process Clause.

## II. Carry.

■ Although the defendant attempts to sidestep this portion of the opinion, the *Bailey* Court remanded Bailey's and Robinson's cases to the respective circuit courts to determine whether their section 924(c)(1) convictions could be upheld under the "carry" prong. —— U.S. at ——, 116 S.Ct. at 509. Therefore, active employment is required only under the "use" prong, not the "carry" prong. Rather, the passive, hidden presence of a firearm on or near the defendant's person during the commission of the underlying

offense may lead to criminal liability under the "carry" prong. *E.g., Bailey,* —— U.S. at ——, 116 S.Ct. at 507 (noting that "a firearm can be carried without being used, e.g., when an offender keeps a gun hidden in his clothing throughout a drug transaction"); *United States v. Range,* 94 F.3d 614 (11th Cir.1996) (affirming the section 924(c)(1) conviction of a defendant "who knowingly carried a gun under the floormat of the car when he delivered the money for the cocaine"); *United States v. Farris,* 77 F.3d 391, 395 (11th Cir.) (affirming the conviction of a defendant who carried a firearm in the glove compartment of his car, even though he was not in the car when it was stopped), *cert. denied,* 77 F.3d 391 (1996).

■ This Court previously denied co-defendants/co-conspirators DIGALARAMO's and RODRIGUEZ's section 2255 motions on "carrying" grounds (among others). With respect to DIGALARAMO, the Court was persuaded by the Government's position that there was a factual basis to support DIGALARAMO's guilty plea since "[f]irearms were present within the house, a fact which induced the officer to go within to complete the transaction, and the firearm[s] were within immediate reach of [LYNCH] and [DIGALARAMO]." (Docket No. 247, p. 2). Similarly, with respect ·to the defendant RODRIGUEZ, this Court concluded that he, as a co-conspirator, was responsible for DIGALARAMO's unlawful "carrying" of a firearm based on the fact that DIGALARAMO was given a firearm to make sure the drug transaction was properly completed. (Docket No. 273, p. 2).

This Court stands by its prior rulings. Thus, under the *Pinkerton*[1] theory of liability, WARREN was just as responsible for DIGALARAMO's "carrying" as RODRIGUEZ and DIGALARAMO were. The fact that LYNCH was acquitted of the § 924(c)(1) count does not change this conclusion, in that the standard for convicting a defendant (guilt beyond a reasonable doubt) is different from the standard for affirming a guilty plea (evidence from which a court could reasonably find that the defendant was guilty).

---

**1.** 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

The Court rejects the defendant's cursory argument that the Government cannot rely on *Pinkerton* since WARREN was not charged as an aider, abettor, or co-conspirator in the § 924(c)(1) count. (Docket No. 275, p. 5). It is well settled that "a party to a conspiracy may be held responsible for a substantive offense committed by a coconspirator in furtherance of a conspiracy, even if that party does not participate in or have knowledge of the substantive offense." *United States v. Dean,* 59 F.3d 1479, 1489 (5th Cir.1995) (affirming the § 924(c)(1) convictions of two (2) defendants who were charged with and convicted for: (1) conspiracy to possess, and (2) possession, with intent to distribute cocaine base, and (3) using and carrying a firearm (without an aiding, abetting, or conspiracy charge within the § 924(c)(1) count)), *cert. denied,* — U.S. —, 116 S.Ct. 794, 133 L.Ed.2d 742 (1996); *accord United States v. Alvarez,* 755 F.2d 830, 849–50 (11th Cir.), *cert. denied,* 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985). The Court agrees with the United States Court of Appeals for the Fifth Circuit that the application of *Pinkerton* to § 924(c)(1) remains viable after *Bailey. United States v. Wilson,* 105 F.3d 219, 221 (5th Cir.1997) (stating that "even after *Bailey,* a co-conspirator may be held responsible under § 924(c)(1) for the acts that another member of the conspiracy took in pursuit of their unlawful scheme").

Furthermore, the defendant WARREN could not plausibly convince the Court that DIGALARAMO's "carrying" was not reasonably foreseeable to him. WARREN was present when DIGALARAMO was given a firearm. WARREN obviously knew about the presence of firearms within the residence in light of his statement to the undercover officer. Finally, given the large amounts of cash and cocaine to be exchanged at the residence, it is entirely reasonable for a co-conspirator in WARREN's shoes to expect firearms to be readily accessible at the site of the offense. *See Dean,* 59 F.3d at 1490 n. 20.

Therefore, notwithstanding the "use" prong, the defendant WARREN's conviction and sentence for "carrying" satisfy the Due Process Clause. All other arguments advanced by the defendant not specifically mentioned herein are rejected as without merit and unworthy of discussion. Accordingly, it is

**ORDERED** that the defendant WARREN's section 2255 motion (Docket No. 251) be **DENIED;** the Defendant's Request for Certificate of Appealability (Docket No. 296) be **DENIED;** and the Clerk of this Court **NOTIFY** the Clerk of the Circuit Court that the remand is complete by the issuance of this Order.