[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10993
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 22, 2011
JOHN LEY
CLERK

D.C. Docket No. 0:09-cr-60249-WJZ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASON CYRIL CUMMINGS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 22, 2011)

Before TJOJFLAT, CARNES and ANDERSON, Circuit Judges.

PER CURIAM:

Jason Cyril Cummings appeals his convictions, following a jury trial, for possession of cocaine with intent to distribute and possession of a firearm during a drug trafficking offense, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(1)(A). On appeal, Cummings argues that the government presented insufficient evidence at trial to overcome his defense of entrapment and that multiple instances of error occurred at his trial, which, taken cumulatively, deprived him of his right to a fair proceeding.

## I.

Cummings first argues that the evidence at trial was insufficient to establish his predisposition to committing both charged offenses beyond a reasonable doubt, as necessary to overcome his entrapment defense. Specifically, he asserts that the government's sole evidence of predisposition came from a confidential informant ("CI") whose testimony was vague, unworthy of belief, and conflicted with the case agent's expression of shock at his arrest.

We review *de novo* a defendant's conviction notwithstanding an entrapment defense, viewing all facts and drawing all inferences in the government's favor. *United States v. King*, 73 F.3d 1564, 1568 (11th Cir. 1996).

An entrapment defense requires proof that: (1) the government induced the defendant to commit the crime and (2) the defendant was not predisposed to commit the crime before the government's involvement. *United States v. Demarest*, 570 F.3d 1232, 1240 (11th Cir.), *cert. denied*, 130 S.Ct. 1421 (2009). If the defendant can prove inducement, the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime. *Id.*

Where, as here, the jury rejected an entrapment defense and government inducement is not at issue, we limit our review to "whether the evidence was sufficient for a reasonable jury to conclude that the defendant was predisposed to take part in the illicit transaction." *United States v. Brown*, 43 F.3d 618, 622 (11th Cir. 1995). Regarding predisposition, the Supreme Court has observed that law enforcement may not "implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." *Jacobson v. United States*, 503 U.S. 540, 553, 112 S.Ct. 1535, 1543 (1992) (quotation and emphasis omitted). The *Jacobson* Court held, however, that an entrapment defense will not succeed where the evidence shows that the government merely provided the defendant with an opportunity to commit a crime. *Id.* at 550, 112 S.Ct. at 1541. In such cases, "the entrapment defense is of little use

because the ready commission of the crime amply demonstrates the defendant's predisposition." *Id.*

Predisposition is a fact-intensive inquiry, to which several "guiding principles" apply. Those principles to be considered are: (1) a predisposition finding is supported by the defendant's post-arrest statements and evidence that the defendant failed to take advantage of opportunities to back out of a transaction; (2) evidence of prior related offenses is relevant, but not dispositive; and (3) evidence of pertinent legal activity and non-criminal tendencies will not, standing alone, support a conviction. *Brown*, 43 F.3d at 624. Additionally, the jury's credibility determination is a "pivotal factor." *Id.* As such, a reasonable jury could believe that a defendant's statements suggesting prior involvement in drug dealing actually referred to real events, as opposed to "puffery." *Id.* at 626.

The government introduced evidence, primarily through the CI, that Cummings had a preexisting knowledge of drug trafficking, that he carried firearms without any encouragement, and that he persisted with the cocaine deal despite a government-presented opportunity to back away from it. Viewing the evidence with all inferences in the government's favor, Cummings's own undisputed statements signaled his involvement with drug dealing prior to the investigation. He told the CI that he only "fuck[ed] with . . . coke" and "moved a

4

couple of keys here and there." *See Brown*, 43 F.3d at 626. He compared prices between Florida and the Northeast, and inquired about the availability of local testers. He discussed the quality of his cocaine, remarking that it could be cut three times. Despite Cummings's assertion to the jury that he was simply "pretending," and, even when corroborated with Gray's testimony that he was a "big talker," the jury was entitled to construe his statements to the CI as truthful indications that Cummings engaged in past drug trafficking and was knowledgeable about the trade.

Moreover, even without those statements, Cummings behaved in a way that signaled his predisposition. Rather than report the CI to police or otherwise avoid a drug deal, Cummings met with the CI, searched him for a wire, asked him if he was a police officer, and showed him a gun. *See King*, 73 F.3d at 1568. Convinced of the CI's trustworthiness, Cummings then provided him with a sample of cocaine in preparation for a larger, future deal involving kilogram quantities. He ultimately delivered nearly a kilogram of cocaine, later admitting to investing $20,000 of his own money in the deal, setting a resale price of $38,000, and wanting to complete the deal. Such actions supported an inference that Cummings was willing and ready to participate in a cocaine deal—and to bring a gun to the deal—at the first opportunity, irrespective of the government's

participation. Cummings has failed to establish that the CI's testimony was incredible as a matter of law. Moreover, the jury was entitled to consider Cummings's testimony on his own behalf as substantive evidence of his predisposition. Accordingly, we conclude that the evidence at trial was sufficient to prove Cummings's predisposition to commit both offenses beyond a reasonable doubt, notwithstanding his defense of entrapment.

## II.

Cummings next argues that a number of evidentiary and procedural defects at trial amounted to cumulative error. Cummings identifies errors at three stages of his trial. First, he asserts that the district court made erroneous rulings during the presentation of evidence by: (i) permitting the government to elicit hearsay testimony from a law enforcement agent, (ii) permitting the government to ask the agent inflammatory questions about the CI's conduct, (iii) permitting a prejudicial line of cross-examination regarding Cummings's military service, and (iv) precluding him from cross-examining witnesses about material matters. Second, he asserts that the government improperly vouched for witnesses during its opening statement and closing argument. Last, Cummings asserts that the district court inadequately answered a question posed by the jury during deliberations.

6

We review *de novo* the cumulative impact of multiple, allegedly improper trial court rulings. *United States v. Hoffman-Vaile*, 568 F.3d 1335, 1340 (11th Cir. 2009). Under the cumulative error doctrine, even if individual judicial errors or prosecutorial misconduct would not suffice to warrant reversal, their effect may be evaluated cumulatively to determine if they denied the defendant a fair trial. *United States v. Lopez*, 590 F.3d 1238, 1258 (11th Cir. 2009), *cert. denied*, 130 S.Ct. 413 (2010). "In addressing a claim of cumulative error, we must examine the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *Id.* (quotation omitted). If there is but a single error, there cannot be any cumulative error. *United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004).

With respect to Cummings's alleged evidentiary errors, the Federal Rules of Evidence generally prohibit admission of hearsay, but if hearsay evidence may be potentially offered for both its truth and for other purposes, the district court may instruct the jury that it must not consider the evidence for its truth. *See* Fed.R.Evid. 105, 802. A jury is presumed to follow a court's instructions. *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1218 (11th Cir.), *cert. denied*, 130 S.Ct. 3532 (2010). Thus, "[w]hen a district court issues a curative instruction, we will reverse only if the evidence is so highly prejudicial as to be incurable by the trial court's

admonition." *United States v. Trujillo*, 146 F.3d 838, 845 (11th Cir. 1998) (quotation omitted).

An exception to the general hearsay rules exists for a "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition." Fed.R.Evid. 803(3). This exception, however, only pertains to the state of mind of the declarant, not the listener. *De La Cruz Suarez*, 601 F.3d at 1216. It does not apply to the declarant's after-the-fact statements made about his past state of mind. *Id.* It similarly does not apply to the "declarant's statements as to why he held the particular state of mind." *United States v. Duran*, 596 F.3d 1283, 1297 (11th Cir.), *cert. denied*, 131 S.Ct. 210 (2010).

"A district court has wide discretion to control the cross-examination of witnesses." *United States v. Guzman*, 167 F.3d 1350, 1352 (11th Cir. 1999). Cross-examination is limited by the relevance of the material. *United States v. Maxwell*, 579 F.3d 1282, 1296 (11th Cir. 2009).

Generally, inflammatory testimony is prohibited and may be grounds for reversal if considered unduly prejudicial. *United States v. Baker*, 432 F.3d 1189, 1230-31 (11th Cir. 2005) (holding that the admission of "highly inflammatory" evidence of the defendant's participation in a double murder cast doubt enough to warrant reversal on the defendant's firearms convictions). But where a defendant

raises an entrapment defense, he places his character at issue, and, as such, cannot complain when the government introduces character-related rebuttal evidence. *Duran*, 596 F.3d at 1298-99; Fed.R.Evid. 404(a)(1).

Improper vouching, a form of prosecutorial misconduct, occurs when the prosecutor, while arguing, either: (1) places the prestige of the government behind the witness by making explicit personal assurances of the witness's credibility; or (2) implicitly vouches by implying that the witness's credibility is supported by evidence outside the record. *De La Cruz Suarez*, 601 F.3d at 1218. Improper vouching does not exist where a prosecutor "simply [makes] explicit an inference that the jury could have drawn from the evidence." *United States v. Epps*, 613 F.3d 1093, 1101 (11th Cir. 2010) (quotation omitted), *cert. denied* 131 S. Ct. 1526 (2011). Even where vouching occurs, it only warrants reversal if it prejudicially affects the substantial rights of the defendant. *Cargill v. Turpin*, 120 F.3d 1366, 1379 (11th Cir. 1997) (recognizing that the defense's response argument at closing can ameliorate the improper prosecutorial comments).

Finally, with respect to Cummings's assertion that the district court's answer to the jury's question was improper, trial courts have "some obligation" to make reasonable efforts to answer jury questions. *United States v. Rodriguez*, 765 F.2d 1546, 1553 (11th Cir. 1985). As such, "[w]hen a jury makes explicit its

difficulties a trial judge should clear them away with concrete accuracy." *Id.* (quotation omitted). Nevertheless, we have held that no error occurred when the district court, through no fault of its own, failed to answer the jury's question prior to the verdict. *Id.* at 1554.

Cummings has failed to establish multiple errors in his trial proceedings. To the extent the district court allowed the government to ask an agent questions about the CI's out-of-court statements and conduct, it gave specific limiting instructions, admonishing the jury not to consider the declarant's statement for the truth of the matter. Moreover, Cummings largely fails to identify specific instances of inadmissible hearsay, relying instead on an alleged cumulative effect. To the extent specific instances are identified, any error is clearly harmless. And Cummings wholly fails to demonstrate any cumulative harmful effect. Because the government's cross-examination regarding Cummings's military service was proper rebuttal to the inferences of good character he attempted to create on direct examination, and Cummings's own cross-examination of other witnesses implicated irrelevant issues, the district court rulings regarding the questioning of witnesses were within its discretion. Insofar as Cummings identified an error in the government's reference to law enforcement's "experience" during its closing argument, this error caused him no undue prejudice. Finally, Cummings fails to

support his proposition that the district court's response to the jury's questions was inadequate. Error in this case, if any, was harmless in any event. Accordingly, we hold that he received a fair trial.

Upon review of the record, and consideration of the parties' briefs, we affirm.

**AFFIRMED.** [1]

---

[1] Cummings's request for oral argument is denied.