[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13147
Non-Argument Calendar
_____

D.C. Docket No. 0:18-cr-60021-BB-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MICHAEL ROY FRASER,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 4, 2019)

Before JILL PRYOR, BRANCH and JULIE CARNES, Circuit Judges.

PER CURIAM:

Michael Roy Fraser, a Jamaican citizen, was convicted by a jury of unlawfully procuring a certificate of U.S. naturalization, *see* 18 U.S.C. § 1425(a), and using an unlawfully procured certificate of naturalization as proof of citizenship, *see* 18 U.S.C. § 1423.  At trial, the government introduced a videotaped recording of a U.S. Citizenship and Immigration Services ("USCIS") agent's interview with Fraser, in which Fraser admitted he paid a U.S. citizen for marrying him so he could become a lawful permanent resident.  On appeal, Fraser argues that the district court should have suppressed the videotaped recording because the USCIS agent did not deliver *Miranda* warnings[1] to Fraser prior to initiating the interview.  After careful review, we affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The government presented the following facts at trial.  Fraser, a Jamaican citizen, married a U.S. citizen and became a naturalized U.S. citizen.  Fraser later submitted a petition asking for a non-citizen relative to be considered for permanent resident status.  That petition stated that Fraser's marriage to his U.S. citizen wife had ended and that he subsequently had married a Jamaican citizen, for whom he was now requesting permanent resident status based on his own U.S. citizenship.  To adjudicate Fraser's petition for his new wife to obtain permanent

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

residency, a USCIS Immigration Officer requested that Fraser come to a USCIS field office for two interviews.

At the second interview, the Immigration Officer escorted Fraser to the office of a USCIS Fraud Detection Unit duty officer.  The duty officer conducted a videotaped interview with Fraser, and both the video and a government-prepared transcript of its contents were introduced at trial.  No one gave Fraser *Miranda* warnings prior to or during his interview with the Fraud Detection Unit duty officer.  The duty officer asked Fraser, "Was your marriage to [the U.S. citizen] a real marriage or did you marry her just so you could get your green card in the United States?"  Doc 71 at 96.[2]  Fraser answered that he had married the U.S. citizen "[t]o get the green card."  *Id.*  Fraser also told the duty officer that he had paid the U.S. citizen several thousand dollars after they married.  More than three years after this interview, Fraser was indicted and arrested on the instant charges.

Fraser's trial counsel never moved to suppress the videotape, whether on the basis that Fraser should have received *Miranda* warnings or on any other basis.[3] The jury convicted Fraser of unlawfully procuring a certificate of U.S. naturalization, *see* 18 U.S.C. § 1425(a), and using an unlawfully procured certificate of naturalization as proof of citizenship, *see* 18 U.S.C. § 1423.  The

---

[2] "Doc. X" refers to the numbered entry on the district court's docket.

[3] Fraser's trial counsel did object to the tape's admission on other grounds, but the district court overruled those objections, and Fraser's new counsel does not reassert them on appeal.

3

district court revoked his U.S. citizenship and sentenced him to concurrent prison terms of six months followed by concurrent supervised release terms of three years.  Fraser timely appealed.

## II.    STANDARD OF REVIEW

With new counsel on appeal, Fraser for the first time argues that the USCIS Fraud Detection Unit duty officer's failure to provide him *Miranda* warnings violated his Fifth Amendment right against self-incrimination and required suppression of his statements to the duty officer.[4]  The Government thus asserts, and Fraser never contests, that the plain error standard applies to our review of this issue.  Accordingly, we apply the plain error standard.  *See* Fed. R. Crim. P. 51(b), 52(b); *United States v. Moriarty*, 429 F.3d 1012, 1018 (11th Cir. 2005).

To reverse a conviction based on plain error, the defendant bears the burden of showing that (1) the district court erred; (2) its error was plain; (3) the error affected substantial rights; and (4) the error "seriously affects the fairness, integrity or public reputation of judicial proceedings."  *United States v. Olano*, 507 U.S. 725, 732 (1993) (internal quotation marks omitted) (alteration adopted); *see also United States v. Margarita Garcia*, 906 F.3d 1255, 1266-67 (11th Cir. 2018).

---

[4] Fraser also contends that the lack of *Miranda* warnings violated his Sixth Amendment right to counsel, but because formal judicial prosecution did not start until after the videotaped interview, his Sixth Amendment rights did not attach until after the interview.  *See United States v. Woods*, 684 F.3d 1045, 1056 n.8 (11th Cir. 2012); *United States v. Hidalgo* 7 F.3d 1566, 1569 (11th Cir. 1993).  We summarily reject this part of Fraser's claim.

Even if the defendant satisfies all four criteria, correcting a plain error is a decision left to our discretion.  *Olano*, 507 U.S. at 732, 735.

## III.   DISCUSSION

We affirm Fraser's conviction, because even if the district court erred under the first prong of the plain error standard by admitting the videotape of the USCIS duty officer's interview of Fraser—an issue we expressly do not decide—such error was not plain under the second prong.[5]  The exclusionary rule applies only to statements made in the absence of *Miranda* warnings during "custodial interrogation."  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  We assume—but again do not decide—that the USCIS Fraud Detection Unit duty officer was asking questions reasonably designed to elicit incriminating information and that therefore an interrogation was underway.  *See Rhode Island v. Innis*, 446 U.S. 291, 301-02 (1980).  Nevertheless, the question remains whether Fraser was "in custody." *Miranda*, 384 U.S. at 445.  After a careful search, we have not found, and Fraser has not identified, any case from the Supreme Court, our Court, or any other federal court of appeals holding that a person who voluntarily attends an interview at a USCIS office to seek permanent residency for a non-citizen relative is taken into custody and that his un-Mirandized statements to USCIS agents regarding his

---

[5] *See, e.g.*, *United States v. Dortch*, 696 F.3d 1104, 1112 (11th Cir. 2012) (resolving issue by looking only at the second prong of the plain error standard); *United States v. King*, 73 F.3d 1564, 1572 (11th Cir. 1996) (same).

citizenship or his application on behalf of his non-citizen relative must be suppressed in a criminal proceeding.

None of the four cases on which Fraser relies comes close to standing for this proposition. In *Mathis v. United States*, a federal agent visited the defendant while he was imprisoned for a state conviction and elicited from him un-Mirandized incriminating statements regarding federal tax refunds. 391 U.S. 1, 2-3 & n.2 (1968). The Supreme Court ruled that the statements should have been suppressed, rejecting the government's argument that *Miranda* should not apply because the defendant was in custody for a reason unrelated to the federal investigation. *Id.* at 4-5. *Mathis* does not control here. The government never disputed in *Mathis* whether the defendant was in custody; it disputed only whether that particular custody counted for *Miranda* purposes when the reason for the custody was unrelated to the federal investigation. Moreover, unlike in *Mathis*, Fraser was not imprisoned when he was interviewed.

In *United States v. Griffin*, which Fraser quotes but fails to cite, two FBI agents questioned the defendant at home for two hours. 922 F.2d 1343, 1346 (8th Cir. 1990). The agents sent the defendant's parents upstairs so that they could speak privately with the defendant, ordered him to stay in their view at all times, insisted on escorting him each time he requested permission to obtain cigarettes from other places in the house, and arrested him at the end of the interview. *Id.*

6

The Eighth Circuit held that the defendant's statements to the FBI agents should have been suppressed because these facts, taken together, made the interrogation custodial. *Id.* at 1354-57. But these circumstances are a far cry from Fraser's interview with the USCIS Fraud Detection Unit duty officer. Fraser came to the USCIS office voluntarily, nothing in the record suggests any kind of restraint on his freedom to move or leave, and Fraser was not arrested until years after the videotaped interview.

In *United States v. Mata-Abundiz*, an Immigration and Naturalization Services (INS) agent questioned the defendant while he was held in pretrial detention in a county jail for alleged violations of state statutes. 717 F.2d 1277, 1278 (9th Cir. 1983). The Ninth Circuit held that the defendant's statements should have been suppressed because the INS agent's questions were reasonably likely to elicit incriminating responses. *Id.* at 1280. But the only question the court decided was whether the INS agent's questioning constituted "interrogation" for *Miranda* purposes, *id.* at 1279; it was undisputed that the defendant was in custody when the questioning occurred.

And in *United States v. Arango-Chairez,* an INS agent called the defendant while he was incarcerated in a county jail for an alleged violation of a state statute and questioned him in person at the county jail the next day. 875 F. Supp. 609, 611-12 (D. Neb. 1994). The district court held that the defendant was in custody

7

for *Miranda* purposes during the phone and in-person interviews.  *Id.* at 615-16.

We do not see *Arango-Chairez* as lending persuasive authority because Fraser was

not incarcerated at the time he was questioned.

"[W]here neither the Supreme Court nor this Court has ever resolved an

issue, and other circuits are split on it, there can be no plain error in regard to that

issue."  *United States v. Aguillard*, 217 F.3d 1319, 1321 (11th Cir. 2000) (citing

*United States v. Humphrey*, 164 F.3d 585, 588 (11th Cir. 1999)).  Therefore, even

assuming that the district court erred in declining to suppress the videotape of the

USCIS Fraud Detection Unit duty agent's interview of Fraser, the district court's

error was not plain.

## IV.    CONCLUSION

For the foregoing reasons, we **AFFIRM** Fraser's convictions.

**AFFIRMED.**